**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DISH NETWORK L.L.C, and SLING TV L.L.C., | |
| *Plaintiffs/Counterclaim-Defendants* | Case No.: 19-cv-0021 (VSB) |
| vs. | |
| ASIA TV USA LTD., ASIA TODAY LTD., and LIVING COMMUNICATIONS INC., | |
| *Defendants/Counterclaim-Plaintiffs* | |

## FIRST AMENDED COUNTERCLAIMS AND ANSWER TO SECOND AMENDED COMPLAINT OF DEFENDANTS/COUNTERCLAIM-PLAINTIFFS ASIA TV USA LTD, ASIA TODAY LTD. AND LIVING COMMUNICATIONS INC.

By and through their undersigned counsel, Defendant/Counterclaim-Plaintiffs Asia TV USA Ltd., ("Asia TV"), Asia Today Ltd. ("ATL") (together, the "Asia TV Defendants") and Living Communications, Inc. ("LCI" or "Living Communications") hereby counterclaim against Dish Network L.L.C. and Sling TV L.L.C. (together, "DISH"), and submit the below Answer to Plaintiffs' Second Amended Complaint ("SAC") in the above-captioned action.

## COUNTERCLAIMS

1.      Defendants/Counterclaim-Plaintiffs bring this action seeking: (i) this Court's declaration that DISH is in material breach of its agreements with Asia TV and Living Communications, entitling Asia TV and Living Communications to terminate those agreements following DISH's repeated breaches of their terms; (ii) an order preliminarily and permanently enjoining DISH from distributing and publicly performing Asia TV's copyrighted content in breach of certain agreements, without authorization, and in violation of United States copyright law; (iii) an order preliminarily and permanently enjoining DISH from distributing Living Communications' content in breach of the parties' agreement; (iv) a declaration that

1

Defendants/Counterclaim-Plaintiffs are not in material breach of their respective agreements with DISH; (v) a declaration that Asia TV, Living Communications, and DISH entered into a binding agreement settling all disputes between them and at issue in this litigation no later than June 6, 2019; (vi) a declaration that Asia TV does not infringe any copyrighted works in which it has granted DISH a non-exclusive license to distribute and thus, necessarily, to publicly perform; and (vii) and award of damages in an amount to be determined at trial.

## THE PARTIES

2.      Defendant/Counterclaim-Plaintiff Asia TV is a Wyoming corporation, with a principal place of business at 200 Middlesex Turnpike, Suite 202, Iselin, New Jersey 08830.

3.      Defendant/Counterclaim-Plaintiff ATL is a company organized and existing under the laws of the Republic of Mauritius, where it also has its principal place of business.

4.      Defendant/Counterclaim-Plaintiff Living Communications is a Delaware corporation headquartered at 200 Middlesex Essex Turnpike, Suite 202, Iselin, New Jersey 08830.

5.      Plaintiff/Counterclaim-Defendant DISH Network L.L.C. is a Colorado limited liability company, with a principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  DISH's sole member is DISH DBS Corporation, a Colorado corporation with its principal place of business in Colorado.

6.      Plaintiff/Counterclaim-Defendant SLING TV, L.L.C. is a Colorado limited liability company, with a principal place of business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.  Sling TV is a wholly owned indirect subsidiary of DISH.  Its sole member is Sling TV Holding L.L.C., a Colorado limited liability company with its principal place of business in Colorado.  Sling TV Holdings L.L.C. has two members: (i) DISH Technologies L.L.C., a Colorado limited liability company with its principal place of business in Colorado, and (ii) DISH

Network L.L.C.   DISH Technologies L.L.C.'s sole member is DISH Technologies Holding Corporation, a Colorado Corporation with its principal place of business in Colorado.

## JURISDICTION AND VENUE

7.     Complete diversity of citizenship exists between Defendants/Counterclaim-Plaintiffs, and Plaintiffs/Counterclaim-Defendants.   The amount in controversy with respect to Defendants/Counterclaim-Plaintiffs' Counterclaims exceeds $75,000, exclusive of interest and costs.     Based on the foregoing, this Court has subject-matter jurisdiction over Defendants/Counterclaim-Plaintiffs' Counterclaims pursuant to 28 U.S.C. § 1332.

8.     Defendants/Counterclaim-Plaintiffs' Counterclaims for copyright infringement arise under the U.S. Copyright Act of 1976, 17 U.S.C. §§ 106 *et seq*.  Therefore, this Court has subject matter and original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a).

9.     Defendants/Counterclaim-Plaintiffs' Counterclaims for breach of contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and attorneys' fees arise under New York common law, and are so related to the federal claims for copyright infringement that they form part of the same case or controversy.   Therefore, this Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a).

10.     As alleged *infra*, Plaintiffs/Counterclaim-Defendants have committed, and are continuing to commit, a tortious act (including, without limitation, copyright infringement) within the State of New York (including within this judicial district).   Defendants/Counterclaim-Plaintiffs' Counterclaims arise out of, and relate to, this tortious act.  Based on the foregoing, this Court has personal jurisdiction over Plaintiffs/Counterclaim-Defendants pursuant to CPLR § 302(a)(2).

11.     Plaintiffs/Counterclaim-Defendants filed suit against Defendants/Counterclaim-Plaintiffs in this judicial district and therefore consented to personal jurisdiction and venue in this judicial district.

12.     Plaintiffs/Counterclaim-Defendants have consented to the exclusive jurisdiction of the federal and state courts located in New York, New York, to hear and adjudicate any claims, disputes, actions or suits arising under or out of the agreements between the parties at issue in this action, and have therefore consented to personal jurisdiction and venue in this judicial district.

13.     As alleged *infra*, Plaintiffs/Counterclaim-Defendants' wrongful acts and conduct occurred in substantial part in this judicial district.  Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

14.     As alleged *supra*, Plaintiffs/Counterclaim-Defendants are subject to personal jurisdiction in this judicial district.  Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

15.     On information and belief, Plaintiffs/Counterclaims-Defendants and/or their agents may be found in this judicial district.  Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(a).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.     Asia TV brings certain counterclaims to vindicate its rights following DISH's numerous breaches of its agreements with Asia TV, its inexplicable refusal to cure a number of such breaches, and its willful infringement of works in which Asia TV has a copyright interest.

17.     Asia TV is and has at all relevant times been the legal and/or beneficial owner of certain copyrighted works (the "Works") for which it has been granted the exclusive license in the United States and its territories, possessions and commonwealth (the "United States").  The Works

include but are not limited to episodes of the following original television shows: Bhabhiji Ghar Par Hai, Paramavatar Shri Krishna, Kumkum Bhagya, Kundali Bhagya, Ishq Subhan Allah; Ganga Manga, Mahadevi, Mehfil Mitran Di, Dil Khol Ke Bol, Tula Pahte Re, Muddha Mandaram, Omkaram, Gopuram, Zing Zing Zingat, Bathuku Jatka Bandi, Gopuram, Sethji, Woh Apna Sa, Piya Abela, Sethji, Agent Raghav, Qubool Hai, Jodha Akbar, and Meri Sasu Maa.

18.    No Work is a "United States work" as defined in Section 101 of the Copyright Act of 1976, as amended, (the "Copyright Act").[1]   As such, pursuant to Section 411 of the Copyright Act,[2] no Work is required to be registered prior to instituting a civil action for copyright infringement.

19.    Asia TV has been providing DISH with licensed content, including the Works, and in particular South Asian TV channels, for distribution to consumers in the United States and its territories for approximately twenty years.

20.    The relationship between Asia TV and DISH is governed by (i) an Affiliation Agreement, dated March 18, 2011 (the "Affiliation Agreement"); (ii) numerous amendments to the Affiliation Agreement, including a term sheet dated May 13, 2016 (the "Zee TV Term Sheet"); (iii) an International Affiliation Agreement, dated August 1, 2012 (the "International Affiliation Agreement"); and (iv) numerous amendments to the International Affiliation Agreement, including a term sheet dated May 13, 2016 (the "Multi-Channel Term Sheet") (collectively, the "Agreements").

21.    Living Communications brings certain counterclaims seeking a declaration that it is not in material breach of its agreement with DISH and to enforce its contractual rights pursuant to its agreement with DISH.  The relationship between Living Communications and DISH is

---

[1] Set forth at 17 U.S.C. § 101.
[2] Set forth at 17 U.S.C. § 411.

governed by the Dish Network L.L.C. Affiliation Agreement dated March 18, 2011, as amended (the "Z Living Agreement"). DISH has breached this agreement by distributing Z Living ███████ ████████████, in contravention to the express territorial restrictions set forth in the contract.

22.     As discussed below, DISH has repeatedly breached each of the Agreements on multiple occasions as set forth herein, including by publicly performing the Works outside the scope of the license granted to it, thereby infringing Asia TV's exclusive right of public performance as set forth in 17 U.S.C. § 106(4). Despite being notified of such breaches and being given ample time and opportunity to cure them, DISH has brazenly refused to do so. Instead, it has attempted to strong-arm Asia TV into waiving its contractually bargained-for and statutory rights by commencing this and threatening future litigation. Pursuant to the terms of the Agreements, Asia TV is therefore entitled to terminate the Agreements and is further entitled to monetary damages to be determined at trial that have resulted from DISH's numerous breaches.

### DISH FAILS TO PACKAGE AND COMPENSATE ASIA TV FOR THE ZEE CINEMALU CHANNEL

23.     The Twelfth Amendment to the International Affiliation Agreement requires DISH to ███████████████████████████████████████████████████, at an ███████████████████████████████████.

24.     DISH refused to do so in at least 3 instances, namely: Sling TV's "Telugu Pack," Sling TV's "Zee Family Pack," and DISH's "Telugu: Zee Telugu" package.

25.     On November 9, 2018, Asia TV notified DISH it was in breach of the Agreements and demanded that DISH immediately comply with its contractual obligations and remedy this serious breach.

26.     DISH conceded that it had breached the agreement and on November 28 sent a check for approximately ██████ and purported to have fixed the problem.

27.     DISH's purported fix was wholly insufficient to cure this breach, as it related only to Sling TV's Telugu Pack, and DISH refused to correct its breach with respect to the Zee Family Pack.  In particular, while DISH agreed to add Zee Cinemalu to the Zee Family Pack – after Asia TV demanded on multiple occasions that it fulfill its contractual obligations to do so – DISH refused to pay ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ required pursuant to the International Affiliation Agreement.  Indeed, when Asia TV asserted these rights, which it was entitled to do pursuant to the contract between the parties, DISH threatened to pull the package entirely unless Asia TV forewent ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  DISH's threat has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

28.     To date, DISH has failed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ with respect to the Sling TV "Zee Family Pack," as required under the International Affiliation Agreement, as amended.

29.     DISH has additionally failed to cure the Zee Cinemalu packaging for "Telugu: Zee Telugu" on DISH.  Indeed, in his August 6, 2019, testimony Warren Schlichting, Executive Vice President and Group President of Sling TV, L.L.C., indicated that ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮.  DISH accordingly remains in breach of the agreement, and as a result, Asia TV continues to ▮▮▮▮▮▮▮▮▮▮▮ because Zee Cinemalu is not included in Telugu: Zee Telugu.

### DISH REFUSES TO SEND ASIA TV COMPLIANT MONTHLY SUBSCRIBER REPORTS

30.     Section 6.1 of the International Affiliation Agreement requires DISH to send Asia TV Subscriber reports ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮.

31.     In May 2018, at the DISH Team Summit in Orlando, Florida, Akhilesh Gupta, Asia TV's VP, Content Distribution and Marketing, met with Izabela Slowikowska, DISH's VP, Head of Multicultural Business.  During this conversation, Mr. Gupta explained that although █████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████

32.     In response, Ms. Slowikowska stated that notwithstanding its clear contractual obligation, DISH did not want to provide the Subscriber Reports in the proper and required form because DISH does not provide that level of detailed information to any other content providers. Ms. Slowikowska refused to provide any other explanations as to why █████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████.  This refusal was particularly preposterous given the express terms of the parties' agreement in this respect.

33.     Asia TV formally notified Plaintiffs of this breach on November 21, 2018.

34.     DISH responded on December 5, 2018.  In its response, DISH stated that it "has provided such reports" in the past, acknowledging that it had refused to provide such reports for more than two years.  DISH also stated in its letter it would send "reports setting forth the total number of Service Subscribers by package since the Reporting Date of the Agreement and for All Services under the Agreement."  This did not cure DISH's breach of the Agreement.

35.     While DISH provided Asia TV with numbers of Service Subscribers, it did not provide █████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ –

information that allows Asia TV to determine how much it is owed by DISH.

36.     This information is crucial to Asia TV's financial livelihood.  Without it, Asia TV cannot confirm whether it is being correctly compensated pursuant to the terms of the International Affiliation Agreement.  Asia TV relies on these reports in particular because ████████████ ████████████████████████████.

37.     In the past, ████████████████████████████████ ████████████████.  This decision ████████████████████████████ ██████████.

38.     The information contractually required to be included in the subscriber reports is additionally critical to Asia TV because it is used to identify how particular packages are performing and to determine where Asia TV should focus its marketing efforts.

39.     Because DISH has refused to provide the information required pursuant to the contract, DISH has refused to cure this material breach.

40.     Indeed, DISH has conceded, in Paragraph 31 of its Amended Complaint, that it stopped providing compliant Subscriber Reports several years ago.  And in his August 6, 2019, testimony, Mr. Schlichting stated that it ██████████████████████████ ████████████████████████████████████████████ ██████████."

## SLING TV ALLOWS SUBSCRIBERS TO ACCESS THE ASIA TV CONTENT ████████████████████

41.     Sling has also breached the Agreements by allowing the Asia TV channels to be accessed ██████████████████.

42.     In or around October 2018, during Asia TV's discussions ███████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████.

43.     Asia TV promptly investigated and gave notice to Plaintiffs that this was a material breach of the Agreements.

44.     The Agreements expressly prohibit Sling from making Asia TV's content available to its subscribers ███████████. Section 1.1 of the Affiliation Agreement ███████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████."

45.     This provision is incorporated by definition into the grant of rights in Section 1.2.1 of the Affiliation Agreement. For example, Section 1.2.1 (iii) provides that ███████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████."

46.     Section 11 of the Zee TV Term Sheet, which authorizes ███████████

███████████," does not permit ███████████ viewing – it was included to permit users to access the Asia TV channels on ███████████████████. Although this provision expands the ███████████████████████████████, it does nothing to change the definition of ███████████ ███████████████████." Indeed, although it ███████████████████████████████

██████████████████████████████████████████████████.

47. Similarly, Section 1 of the International Affiliation Agreement defines ▮▮▮▮▮



48. This provision is incorporated into the Grant of Rights in Section 2.1 of the International Affiliation Agreement: Section 2.1 (iii) provides that DISH has the right to ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮."

49. Section 9(b) of the Multi-Channel Term Sheet does not permit ▮▮▮▮▮ because it does not modify Section 2.1 (iii) of the International Affiliation Agreement.

50. These provisions are not only clear in the Agreements, but they are well-known and understood by Sling TV, as they were the result of hard-fought negotiations in 2011 and again in 2016. Further, and as Sling is well aware, it is standard practice in the television industry to restrict ▮▮▮▮▮▮▮▮. ▮▮▮▮ rights are incredibly valuable in the television industry. They are expressly negotiated and agreed to by parties, and, significantly, they are rights for which cable and satellite provides additionally compensate content providers.

51. Streaming ▮▮▮▮ is of paramount concern to Asia TV. Such streaming generates a high risk of piracy, which is a life-and-death issue for a content provider like Asia TV, which relies on subscription income to survive. Shared credentials directly deprive it of its rightful income for additional users.

52.     DISH is more than aware that its subscribers are sharing their credentials.  Indeed, during the August 2019 hearing in this case, Mr. Schlichting admitted that DISH keeps ██████████

████████████████████████████████████████████████████████████

████████████████.  By virtue of ██████████, DISH cannot credibly deny being aware that its customers are sharing their passwords, which is costing Asia TV revenue it is entitled to under its contracts with DISH.

53.     Indeed, based on its preliminary investigation, Asia TV discovered that Sling TV subscribers are sharing credentials with unauthorized users, and it and calculated that it is losing at least ██████████ per month in subscription fees due to this breach.

54.     Accordingly, on December 4, 2018, Asia TV notified DISH of this significant material breach, which enabled "significant amounts of 'non-Service subscribers'" to view Asia TV's content.

55.     Asia TV did not receive a response to its December 4, 2018 letter until DISH's outside counsel sent a letter on December 21, the Friday before the Christmas holiday.  Indeed, the notice was sent at 6 p.m. on the evening of Asia TV's annual holiday party, the night before the office closed for the holidays and just as a number of key executives were leaving the country for the holidays.

56.     In an effort to preclude Asia TV from enforcing its contractual right to terminate the Agreements based on DISH's multiple breaches, and before Asia TV had an opportunity to address, much less respond, to DISH's letter, on January 2, 2019, DISH sought a temporary restraining order without properly notifying Asia TV in in violation of the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York.

57.     Federal Rule of Civil Procedure 65(b) required (i) that Asia TV clearly show that immediate and irreparable injury, damage or loss would result before it could be heard in opposition; and (ii) that its attorney certify in writing any efforts made to give notice and the reasons why it should not be required.  Plaintiffs failed to demonstrate any immediate harm and made no efforts to notify Asia TV.

58.     Local Rule 6.1(d) required Asia TV to make a clear and specific showing of good and sufficient reasons why a procedure other than by notice of motion was necessary. Plaintiffs did not make this showing, nor could they – having waited nearly two months from Asia TV's first breach notice to make this application.

59.     DISH has refused to cure this breach during the pendency of this litigation.  Asia TV's channels continue to be available to subscribers ▮▮▮▮▮▮▮▮.  DISH therefore remains in breach of the Agreements and continues to refuse to cure this material breach.

60.     As a result of DISH's material breach, Asia TV has suffered an increasing amount of piracy, which has caused Asia TV ▮▮▮▮▮▮▮▮▮▮▮.  This has been plainly demonstrated by the fact that Asia TV has been ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, despite DISH publicly reporting a growing Sling TV subscriber base.

## DISH IGNORES ITS CONTRACT WITH ASIA TV AND ALLOWS SUBSCRIBERS TO ACCESS CONTENT ▮▮▮▮▮▮▮▮▮

61.     DISH has also breached the Agreements by allowing the Asia TV channels to be accessed ▮▮▮▮▮▮▮▮.

62.     Pursuant to Section 1.4 of the Affiliation Agreement and Part A of the International Affiliation Agreement, Asia TV ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮.

63.     Section 1.4 of the Affiliation Agreement provides that ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████."

64.     Part A of the International Affiliation Agreement defines ████████████████

████████████████████████████████████████████████████████████████

████████."

65.     The license grants in the Affiliation Agreement and the International Affiliation
Agreement are limited to the ████████. In particular, Section 1.2 of the Affiliation Agreement
grants DISH ████████████████████ and Section 11 of the Zee TV Term Sheet grants
DISH the right to ████████████████████████████████████

████████████." In addition, pursuant to Section 2.1(iii) of the International Affiliation Agreement,
Asia TV has granted to DISH the right to ████████████████████████

████████████████████████████████████████████████████████████████

████████." And pursuant to Section 9(b) of the Multi-Channel Term Sheet, Asia TV has granted
DISH the right ████████████████████████████████████████████

████████."

66.     DISH has vastly exceeded the scope of this license grant and expressly authorizes
and enables its subscribers to access the licensed content ████████████████████.

67.     For example, DISH has permitted its subscribers to access the licensed content █
████████████████████████████████in breach of its agreements with Asia
TV since at least July 3, 2019.

68.     The licensed content has been and remains accessible for live ███████████

███████████████████████████████████████████████████████████████

through the DISH Anywhere service, on both desktop and mobile devices.

69.     On July 23, 2019, Asia TV informed DISH that Asia TV's content on Dish

Anywhere was being viewed ██████████████████.  In-house counsel for DISH responded

on July 25, 2019, stating in sum and substance that it would not cure this breach.

70.     DISH has the ability to block the live-streaming of its content ████████████

███.  Indeed, Sling TV is not available ███████████████████████, because DISH

has used geo-blocking technology to limit access to content on Sling TV.

71.     As pictured below, it is standard for content providers to ████████████████

████████████████████ when such rights have not been expressly negotiated and

authorized:



(screenshot taken from mobile phone attempting to access Spectrum cable service)







(screenshots taken from tablet device attempting to access Xfinity cable service)

72.     DISH's ███████████████ of Asia TV's licensed content is a blatant and egregious violation of both the Affiliation Agreement and the International Affiliation Agreement. Accordingly, DISH's refusal to block its viewers from accessing Asia TV's licensed content ███████████████ constitutes a material breach of those agreements.

73.     DISH's breach of the ███████████ of the Agreements are particularly significant because Asia TV ██████████████████████████ ████████████████.

74.     After attempting to resolve DISH's breach of the ██████████████ of its license with Asia TV, and on August 14, 2019, Asia TV sent DISH a formal breach notice relating to the ███████████████ of its licensed content.

75.     On August 19, 2019, DISH sent a letter to Asia TV stating its refusal to cure its material breach of the Agreements.

76.     Asia TV's licensed content is still accessible via DISH Anywhere ███████ ████████████████████████████████.

77.     DISH therefore remains in material breach of the Affiliation Agreement and International Affiliation Agreement.

**DISH IGNORES ITS CONTRACTS WITH LIVING COMMUNICATIONS AND
ALLOWS SUBSCRIBERS TO ACCESS CONTENT** ███████████████████

78.    DISH has also breached the Agreements by allowing the Z Living channels to be accessed ███████████████████.

79.    Pursuant to Sections 1(o) and 3(a) of the Z Living Agreement, DISH Network was granted a license that ███████████████████████████████████████████ ██████████████████████████████.

80.    In particular, Section 1(o) of the Z Living Agreement ███████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ██████████████████████."

81.    DISH has permitted and is permitting its subscribers to access the licensed content ███████████████████.

82.    For example, DISH has permitted its subscribers to access the Z Living channel in ████████████████████, since at least July 3, 2019, which constitutes a material breach of the Z Living Agreement.

83.    DISH's breach of the ████████████████ of the Z Living Agreement is particularly concerning because ████████████████████████████████████████ ████████████████████████.

84.    Z Living has been and remains accessible for live streaming ███████████████ ███████, including but not limited to ████████████████████, through the DISH Anywhere service, on both desktop and mobile devices.

85.    On August 29, 2019, Living Communications sent DISH a formal breach notice relating to the ▮▮▮▮▮▮▮▮▮▮ of its licensed content.

86.    DISH's ▮▮▮▮▮▮▮▮▮▮ of Z Living licensed content is not authorized by the Z Living Agreement. Accordingly, DISH's failure to prevent access to Asia TV's licensed content ▮▮▮▮▮▮▮▮▮ constitutes a material breach of those agreements.

## DISH UNLAWFULLY INFRINGED ASIA TV'S COPYRIGHTED WORKS WHEN IT ALLOWED SUBSCRIBERS TO VIEW THEM ▮▮▮▮▮▮▮▮▮

87.    Asia TV is and has been during all relevant time periods the legal and/or beneficial owner of the Works. It possesses all exclusive rights in the Works in the United States, including the right to publicly perform the Works, as set forth in the Section 106(4) of the Copyright Act.

88.    Asia TV has granted DISH certain limited rights to the Works under the Agreements.

89.    As discussed in Paragraphs 41–61, *supra*, DISH has exceeded the scope of the licenses granted to it by Asia TV under the Affiliation Agreement and the International Affiliation Agreement, and is in breach of the Agreements with respect to ▮▮▮▮▮▮▮▮.

90.    In particular, Section 1.2 (the "Grant of Rights") of the Affiliation Agreement grants DISH, in relevant part, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Section 1.1 of the Affiliation Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

91.    Additionally, Section 2.1(iii) of the International Affiliation Agreement provides that DISH ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."



Section 1 of this agreement ███████████████████████████████████████████
████████.

92.    In other words, under both of the Agreements, DISH's right to publicly perform the
Works is ██████████████████████████████, and DISH is prohibited from publicly
performing the Works ████████████████████.

93.    The Affiliation Agreement does not authorize DISH to publicly perform the Works
███████████████████████, nor does any amendment to the Affiliation Agreement
authorize DISH to publicly perform the Works ████████████████████.

94.    On information and belief, DISH has permitted its subscribers to view Asia TV
content, including the Works, ████████████ since at least October 2018, thereby
exceeding the scope of its license with Asia TV and infringing Asia TV's right to publicly perform
the Works as set forth in Section 106 of the Copyright Act.

95.    Asia TV did not authorize these public performances and they are not authorized
by any license agreement between DISH and Asia TV.

96.    The Works DISH's subscribers were able to view ████████████ include but are
not limited to episodes of the following television programs: Bhabhiji Ghar Par Hai, Paramavatar
Shri Krishna, Kumkum Bhagya, Kundali Bhagya, Ishq Subhan Allah; Ganga Manga, Mahadevi,
Mehfil Mitran Di, Dil Khol Ke Bol, Tula Pahte Re, Muddha Mandaram, Omkaram, Gopuram,
Zing Zing Zingat, Bathuku Jatka Bandi, Gopuram, Sethji, Woh Apna Sa, Piya Abela, Sethji, Agent
Raghav, Qubool Hai, Jodha Akbar, and Meri Sasu Maa.

97.    Asia TV notified DISH that it was in breach of these provisions of the Agreements
in its letter dated December 4, 2018.  Accordingly, DISH has been on notice since that date that
its use was in excess of the license it was granted by Asia TV and that it is therefore infringing

Asia TV's copyrights in the Works. Accordingly, DISH's continued refusal to cure this breach and its infringement is willful.

98.     When DISH publicly performed the Works without authorization and in willful disregard of the terms of their license agreements with Asia TV, it directly infringed Asia TV's exclusive copyright rights.

99.     DISH continues to permit its subscribers to view Asia TV content, including the Works, ███████████████, and its infringement of Asia TV's exclusive right of public performance in the Works is continuous and ongoing.

### DISH UNLAWFULLY INFRINGED ASIA TV'S COPYRIGHTED WORKS WHEN IT ALLOWED SUBSCRIBERS TO VIEW THEM███████████████

100.     Further, as discussed in Paragraphs 62–77, *supra*, DISH has exceeded the scope of the licenses granted to it by Asia TV under the Affiliation Agreement and the International Affiliation Agreement, and is in breach of the Agreements with respect to ███████████.

101.     In particular, Section 1.4 of the Affiliation Agreement and Part A of the International Affiliation Agreement, ████████████████████████
████████████████████████.

102.     On information and belief, DISH has permitted its subscribers to access Asia TV content, including the Works, ████████████████████████,
████████████████ as early as July 3, 2019. The Works DISH's subscribers were able to view ████████████ include but are not limited to episodes of the following television programs: Kundali Bhagya, Happu Ki Ultan Paltan, and Mann Mohini.

103.     In particular, DISH has allowed subscribers to view Asia TV channels in a ██████
████████████████████, since at least as early as July 3, 2019, thereby exceeding the scope of its license with Asia TV and infringing Asia TV's

right to publicly perform the Works as set forth in Section 106 of the Copyright Act. Asia TV did not authorize these public performances and they are not authorized by any license agreement between DISH and Asia TV.

104.    Asia TV notified DISH that it was in breach of these provisions of the Agreements in its letter dated August 14, 2019. Accordingly, DISH has been on notice since at least that date that its use is in excess of the license it was granted by Asia TV and that it was therefore infringing Asia TV's copyrights in the Works. Accordingly, its continued refusal to cure this breach and its infringement is willful.

105.    By publicly performing the Works ███████ ██ ██ ██ ███ ██ ████ without authorization and in willful disregard of the terms of the Agreements, DISH has infringed Asia TV's exclusive right of public performance in the Works.

106.    On information and belief, DISH continues to permit its subscribers to view Asia TV content, including the Works, ██████████████ and its infringement of Asia TV's exclusive right of public performance in the Works is continuous and ongoing.

## DISH'S AGREEMENT TO ███████ ███████████████████████ FOR Z LIVING

107.    In October 2018, Living Communications informed DISH that it was ████████ ███████████████████████████████████████████████████████ ████████████████████████████. It had ██████████████████████ up until that time.

108.    DISH insisted that Living Communications could not ██████████████, and it maintained that position in an attempt to strong-arm Living Communications into keeping Z Living ███████ even after Living Communications explained the circumstances – namely, that ███████████████████████████████████████████████.

109. Shortly thereafter, Living Communications sent notices to all of its affiliates, informing them that it was ███████████████████████████.

110. In November 2018, Living Communications began to ██████████████ ████████████████████████████████████████████████████ ██████████. There are a number of steps involved in ████████████████████, as well as certain legal requirements, including the need to coordinate technical logistics relating to the █████████ and also inform viewers that they will ████████████████████.

111. On November 5, 2018, Living Communications sent DISH formal notice of its █████████████ Z Living channel.

112. On November 9, 2018, Living Communications told DISH it could ██████████ ████████████████████████████████████████████████████, as allowed under the Z Living Agreement.

113. Pursuant to the Z Living Agreement, ████████████████████ ████████████████████████████████████████████████████ ███████████████. It did not do so, even though Living Communications made it clear that it ████████████████████████████████ and expressly asked on multiple occasions ████████████████████████████. DISH's refusal to ██████ ███████████████ was a blatant failure to mitigate its own alleged loss, and demonstrates a failure to act in good faith towards Living Communications.

114. On December 11, 2018, Living Communications emailed DISH and offered to ████████████████████████████████, which it could not ██████████. On that same day, DISH said that it would investigate forgiving the ████████████.

23

115.    On December 20, 2018, DISH emailed Living Communications and confirmed that it would forgo ███████████ for January 2019 because at that point, Living Communications was planning to ███████████████.

116.    DISH's agreement to forego ███████████████ was crucial to Living Communications. Without █████, Living Communications would be able to make an attempt to ███████████. Solely on the basis of DISH's offer to ███████ for January 2019 and its promise to investigate ███████████, Living Communications decided to try to continue to ████████. Living Communications based the entire livelihood of its business on DISH's agreement. If DISH had not made these representations to Living Communications, Z Living would have ██████████████, as planned.

117.    As a result of Living Communications' reliance on DISH's representations, Living Communications was █████████████████████████████████████████████ █████, and it has incurred significant financial loss as a result.

## THE PARTIES' 2019 AGREEMENT

118.    In December 2018, before DISH initiated this lawsuit, Asia TV and DISH began discussing a mutually beneficial business resolution. Akhilesh Gupta, Asia TV's Vice President of Content Distribution & Marketing, flew to Denver three times over the course of that month to negotiate a resolution, and on December 19th, at DISH's request, Sameer Targe, CEO of Asia TV, flew to Denver to finalize and close the agreement.

119.    During December 2018, the parties began negotiating a framework that would resolve the issues raised in Asia TV's notices of breach dated November 9, 2018, November 21, 2018, and December 4, 2018, as well as a number of other issues, including: █████████████ ████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████.

120.   The parties' negotiations continued after DISH filed its complaint.  On January 14, 2019, Asia TV entered into a stipulation under which it gave up its contractual right to terminate its agreements with DISH in exchange for DISH's promise to negotiate a resolution in good faith. *See* Dkt. No. 45.  Asia TV would not have entered into such an agreement and given up its right to terminate its agreements with DISH were it not for DISH's promise to negotiate a resolution in good faith.

121.   The negotiations between DISH and Asia TV continued through June 2019 and resulted in a binding agreement.  These discussions were led on the one hand by Mr. Gupta, and on the other by Bradford Hammer, DISH's General Manager, International Programming. At all times, Mr. Hammer expressly informed Asia TV that he had the necessary authority to negotiate on DISH's behalf and that each offer he made to Asia TV throughout this process had been authorized and agreed to by Warren Schlichting, the Executive Vice President and Group President of Sling TV L.L.C.

122.   On March 19, 2019, DISH confirmed in writing that it agreed ████████████
████████████████████████████████████████████.

123.   On May 16, 2019, Asia TV provided DISH with a written summary of the parties' agreed deal terms, and three remaining issues for resolution. Included in the agreed deal terms

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████.

124.    On May 30, 2019, DISH responded in writing, in an email from Mr. Hammer to Mr. Gupta, stating that it believed its response "covered everything" and that it was simply waiting for Asia TV's confirmation of that fact. In particular, DISH's May 30 response memorialized that it had agreed to the following terms regarding █████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████.

125.    The original deadline under the Zee TV Term Sheet and Multi-Channel Term Sheet for Asia TV to cease distributing content to ████████ was ████████████. Asia TV, however, reasonably relied on DISH's express written representations that it would extend the deadline until May 31, 2020, and ██████████████████████████████████████████. As explained above, the parties had discussed the one-year extension since December 2018, and DISH agreed to it in writing on March 19, 2019. DISH's agreement to ██████████████████████ ████████████████████████████████. As the original deadline approached,

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Then, on ████████

████████—one day before the original deadline—DISH reiterated in writing its agreement to a ██████████████████████. At that point, Asia TV and DISH had worked together for more than twenty years, during which the parties consistently abided by the representations they made to one another

in email correspondence. Indeed, DISH's former Senior Vice President of International Programming Christopher Kuelling testified, during the preliminary injunction hearing held on August 6 and 7, 2019, that " ████████████████████████████████

████████████████████████████████████████████████████

██████." Moreover, DISH's own counsel admitted in an August 19 letter to Asia TV that it is "more than reasonable . . . to rely on [email] communications extending [dates]."

126.    After May 31, the parties discussed some final items, and on June 3, 2019, DISH memorialized the agreed-upon terms in an email to Mr. Gupta.  Among other things, this email expressed DISH's agreement to ██████████████████████████████████████. The email also confirmed the parties' agreement that ████████████████████████

████████████████████.

127.    DISH's June 3 memorialization also confirmed the remaining items relating to ██ ████████. In particular, the email memorialized that parties' agreement that: (i) ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████. As part of these negotiations, the parties worked, at DISH's request, towards commencing the technical steps required to ██████████████████████████

████████████████. On multiple occasions, ████████████████████████

████████████████████████████, which Asia TV provided. ████████████ contain highly sensitive and proprietary information, and Asia TV only provided these documents to DISH

27

because it understood, based on its two decades of working with DISH, that DISH was committed to and moving forward with ▇▇▇▇▇▇▇.

128.   On June 6, 2019, Asia TV wrote to DISH and agreed to and accepted all material terms of the agreement, thus creating a binding contract between the parties.

129.   In that same email, Asia TV made a single recommendation relating to an immaterial term of the agreement—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In particular, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. This was not a material term of the parties' negotiated deal, nor would it in any way change the parties' material understanding that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, which was agreed upon by both parties and documented in an amendment in May 2016.

130.   DISH did not respond to Asia TV's June 6 email, nor did it communicate in any other way that the parties' agreement was not valid, binding, and/or enforceable.

### MICHAEL SCHWIMMER CAUSES DISH TO RENEGE ON THE PARTIES' AGREEMENT

131.   Much to Asia TV's surprise, a few weeks after it accepted DISH's terms in writing, DISH's counsel notified counsel for Asia TV that settlement negotiations were being placed on hold.  This was particularly surprising to Asia TV, given that the parties had already agreed to the terms they had extensively negotiated over the previous six months.

132.   On June 28, 2019, DISH reneged on its agreement with Asia TV and proposed entirely new deal terms to Asia TV, many of which ran counter to those that had been previously negotiated and agreed-upon.

133.   DISH provided no explanation for its refusal to abide by the agreed-upon terms or for its proposal of entirely new and completely different terms.

134.    DISH's change in position was directed by Michael Schwimmer, who had recently joined Sling TV L.L.C. as Executive Vice President of International Programming, Business Development and Strategy.  Mr. Schwimmer reports to Mr. Schlichting, who is the Executive Vice President and Group President of Sling TV L.L.C., and a former Comcast executive and industry veteran with nearly a decade of experience with DISH. Mr. Schlichting had been closely involved with the negotiations between the parties, and had approved each and every material term of their June 6, 2019 agreement.

135.    Asia TV had ███████████████████████. At that time, ███████████████ ███████████████████████████.

136.    ███████████████████████████████ ███████████████████████████████ ███████████████████.

137.    Asia TV believes that ███████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████. On information and belief, but for Mr. Schwimmer, DISH would not have reneged on its agreement with Asia TV.

138.    Dish has provided Asia TV with no explanation of its refusal to honor and abide by the parties' agreement, other than the fact that Mr. Schwimmer has taken over this role at DISH.

### IN THE ALTERNATIVE, DISH BREACHED ITS AGREEMENT WITH ASIA TV WHEN IT FAILED TO LAUNCH ZEE FAMILIA

139.    Pursuant to Section 4 of the Zee TV Term Sheet, DISH agreed that it ███████ ████████████████████████████████████████████ and ██████

██████████████████████████████████████████████████

████████████." This "second channel" is Z Living Espanol, which has since been renamed Zee Familia.

140.    Pursuant to Section 4 of the Zee TV Term Sheet, ████████████████████
████████████████████████████████████████.

141.    On November 30, 2018, pursuant to Section 4 of the Zee TV Term Sheet, Asia TV ██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████.

142.    On November 30, 2018, also pursuant to Section 4 of the Zee TV Term Sheet, ███████

██████████████████████████████████████████████████

█████████████████████.

143.    Section 4 of the Zee TV Term Sheet ████████████████████████████

████████████████████.

144.    As part of the June 2019 agreement between Asia TV and DISH, Asia TV agreed to ███████████████████████. However, in the event that the Court determines that the parties did not reach a binding agreement, then the Zee TV Term Sheet's ████████████████ ██████████ remains in full force and effect.

145.    ████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████. As a

result of DISH's failure to launch Zee Familia as required by Section 4 of the Zee TV Term Sheet,

Asia TV lost more than six months of advertising revenue and suffered damages in excess of

███████.

146.    On August 12, 2019, Asia TV sent DISH a letter to notify it of this material breach.

147.    DISH's failure to timely launch Zee Familia is a breach of the Affiliation Agreement

and Zee TV Term Sheet.

148.    Because Zee Familia was required to be and had not ████████████████████,

2018, DISH's material breach of the Affiliation Agreement, as amended by the Zee TV Term

Sheet, cannot be cured.

## A DISPUTE HAS ARISEN AS TO CERTAIN RIGHTS AND OBLIGATIONS OF THE PARTIES IN CONNECTION WITH ████████████████ ON FOUR CHANNELS

149.    As relevant here, pursuant to Section 16 of the Zee TV Term Sheet, "████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████" among other requirements. ████████████████████████████

████████████████████████████████████████████"

150.    Pursuant to Section 16 of the Zee TV Term Sheet, "████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████ ."

151.    DISH first notified Asia TV of an alleged breach by Asia TV of Section 16 of the

Zee TV Term Sheet on July 7, 2020, when it communicated its intent to file an amended pleading

in this action to add allegations that Asia TV breached the Agreements by failing to provide DISH

with all the ████████████████ required thereunder.

152.    A dispute has arisen as to the Parties' obligations under Section 16 of the Zee TV

Term Sheet.

### IN THE ALTERNATIVE, DISH BREACHED THE INTERNATIONAL AFFILIATION AGREEMENT WITH ASIA TV WHEN IT FAILED TO ██████████████████

███████████████████████████████████████████████████████████

153.    Pursuant to Section 4 of the Multi-Channel Term Sheet, DISH agreed that it would

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████ ."   The new

channels included ██████████████████████████████████████████

████████████████████ and ████████████████████████████████████

█████████████████████████████████████ .

154.    As part of the June 2019 agreement between Asia TV and DISH, Asia TV agreed

to ██████████████████████████████████████████████████████████

██████████████. However, in the event that the Court determines that the parties did not reach a binding agreement, then the requirement in the Multi-Channel Term Sheet that ████████ ███████████████████████████████ remains in full force and effect.

155.   Since the execution of the Multi-Channel Term Sheet, DISH has demonstrated and acknowledged by its words and its conduct its continued understanding that it is obligated to ███████ █████████████ identified in the Multi-Channel Term Sheet.

156.   Pursuant to Section 4 of the Multi-Channel Term Sheet, ███████████████████ ████████████████████████████████████████████ ██████████████.

157.   In a telephone call on August 27, 2020, DISH asked Asia TV to provide the signals for ████████████████████████████████████. On August 28, 2020, DISH confirmed in writing its understanding that it was moving forward with the ██████████████ ████████████████████████, and DISH asked that Asia TV complete technical documentation and provide other information ████████████.

158.   On August 31, 2020, pursuant to Section 4 of the Multi-Channel Term Sheet and DISH's requests, Asia TV █████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ and policies.

159.   Section 4 of the Multi-Channel Term Sheet ███████████████████ ████████████████████████████████████████████ ██████████████████████████.

160.    From August 31, 2020, until September 25, 2020, Asia TV sent four follow up emails to DISH. On September 25, 2020, DISH finally responded, attributing its delay to unrelated work on another project. On September 28, 2020, responded to DISH's request for ███████ ███████████████████. Asia TV sent a follow up email to DISH on October 2, 2020. On October 4, 2020, DISH asked ████████████████████████████, to which Asia TV responded that they were. Asia TV sent multiple follow up emails to DISH during the following week but received no response.

161.    Since in or around October 2020, DISH has failed and refused ███████████ ████████████████████████████ despite the parties' efforts up until that time ███████████████.

162.    On December 4, 2020, Asia TV sent DISH a letter to notify it of this material breach, which Asia TV thereafter temporarily withdrew while addressing the issue with DISH's counsel. On December 9, 2020, in response to Asia TV's notice, DISH asserted for the first time that it was not obligated to ███████████████████████████████ because Asia TV had not satisfied a condition precedent more than four years earlier. DISH's assertion is inconsistent both with the parties' intentions, specifically because DISH never ████████████████████████████████████████, and with its conduct during the past two years, by which DISH demonstrated and acknowledged an ongoing obligation to █████████████████████.

163.    DISH has informed Asia TV that it does not intend to ████████████████ ██████████████ and accordingly DISH has breached and will continue to breach the International Affiliation Agreement and Multi-Channel Term Sheet.

164.    DISH's failure to ███████████████████████████████████

███████ is a breach of the International Affiliation Agreement and Multi-Channel Term Sheet.

165.    As a result of DISH's failure to launch ████████████████████████

████████████████ as required by Section 4 of the Multi-Channel Term Sheet, Asia TV lost

and will lose more than five months of advertising revenue and suffered damages in excess of

███████.

### DISH BREACHED THE AFFILIATION AND INTERNATIONAL AFFILIATION AGREEMENTS BY REFUSING TO PAY ████████████ AND ASSERTING AN UNLAWFUL ASSIGNMENT AND OFFSET

166.    Beginning on or around July 1, 2020, DISH stopped paying ████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████.

167.    On October 15, 2020, more than a year after DISH disavowed the 2019 Agreement

waiving all ████████████████, with claims concerning the 2019 Agreement still pending in

this litigation, Mr. Schwimmer sent a letter to Defendants/Counterclaim-Plaintiffs captioned

"Second Notice of Breach of Z Living Agreement and Notice of Assignment and Set-Off" (the

"Notice of Assignment and Set Off"). In this letter, Mr. Schwimmer sought to justify DISH's

failure to pay the ████████████ undisputedly owed to Asia TV under the Affiliation and

International Affiliation Agreements by unilaterally assigning to ATL the Affiliation and

International Affiliation Agreements along with rights to payment of the ████████████, and also

the Z Living Agreement, along with DISH's corresponding claim for the disputed ███████

████████████. Relying on a tortured interpretation of routine integration provisions included in

subsequent amendments to the Agreements, Mr. Schwimmer contended that the terms set forth in

each of the three separately negotiated Agreements are all integrated into each other and that any one term of a particular Agreement may be applied to any of the other Agreements. Mr. Schwimmer took the position that, because of the purported assignment of the Agreements, ATL now owed ██████████████████ to DISH and DISH now owed ████████████████. Thus, Mr. Schwimmer asserted that DISH was entitled to set off the ████████████████ ███████████.

168.   On October 22, 2020, in response to the Notice of Assignment and Set Off, Defendants/Counterclaim-Plaintiffs rejected DISH's position in its entirety and provided DISH with notice of breach for failure to pay ██████████ in the amount of ██████████ under the Affiliation and International Affiliation Agreements (the "October 22 Notice of Breach"). Defendants/Counterclaim-Plaintiffs requested that DISH timely cure these breaches by making payment in full on outstanding ██████████.

169.   Also, on October 22, 2020, Defendants/Counterclaim-Plaintiffs' counsel informed DISH's counsel that DISH's asserted assignment and set off was improper because there was no material breach by Asia TV or LCI that would justify assignment of the Agreements, the claimed ████████████████ are disputed, and DISH cannot offset ██████████████████ ███████████.

170.   Nevertheless, Plaintiffs refused to pay the outstanding ██████████ and filed a motion for preliminary injunction asking the Court to allow DISH to withhold payment of ██████████ based on their purported assignments, integrations, and offsets of the Agreements, and to prohibit Asia TV from terminating the Zee TV and Multi-Channels Agreements based on DISH's nonpayment. DISH has also failed to provide a Payment Report for October 2020 regarding the payments due for the month October, further breaching the Agreements.

171.    As Defendants/Counterclaim-Plaintiffs asserted in their opposition to the motion for preliminary injunction, Asia TV is contractually entitled to payment by DISH of the ████████ ████, which by December 2020 have accrued to approximately ████████. The relief sought by Plaintiffs is impermissible under the parties' Agreements and New York law, and it is also inequitable and disrupts the status quo. Further, the Court previously contemplated a scenario in which Plaintiffs might breach the Agreements, entitling Defendants/Counterclaim-Plaintiffs to exercise their rights, as reflected in its Order dated August 8, 2019, which carves out from the standing preliminary injunction Asia TV's right to terminate in the event of a breach not addressed in Plaintiffs' previous motion for preliminary injunction. *See* Order dated 08/08/19 (Dkt. No. 111).

## CLAIMS FOR RELIEF

### COUNT I
*(Copyright Infringement Under 17 U.S.C. § 501 –* ████████████ *)*

172.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

173.    Counterclaim Count I is for copyright infringement in violation of 17 U.S.C. § 501.

174.    Asia TV is and has been the legal and/or beneficial owner of the Works at all relevant time periods.

175.    The Works are original works of authorship that have been fixed in a tangible medium of expression and constitute copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

176.    The Works are not United States works within the meaning of Section 101 of the Copyright Act, 17 U.S.C. § 101.

177.    Pursuant to Section 411 of the Copyright Act, 17 U.S.C. § 411, because the Works are not United States works, they are not required to be registered prior to instituting an action for copyright infringement

178.    Pursuant to 17 U.S.C. § 106, Asia TV has the exclusive right to, *inter alia*, perform publicly the Works.

179.    Beyond the scope of the licenses granted by Asia TV and without any other authorization, Plaintiffs/Counterclaim-Defendants have unlawfully exercised Asia TV's exclusive rights with respect to the Works when they publicly performed the Works to Sling subscribers ▮▮▮▮▮▮▮▮.

180.    Plaintiffs/Counterclaim-Defendants continue to unlawfully exercise Asia TV's exclusive rights with respect to the Works by publicly performing the Works to their subscribers ▮▮▮▮▮▮▮▮ on a continuous and ongoing basis.

181.    Plaintiffs/Counterclaim-Defendants have committed and are committing each of the foregoing acts with the full knowledge that they are not authorized to do so.

182.    Plaintiffs/Counterclaim-Defendants' conduct constitutes willful copyright infringement.

183.    Asia TV has suffered actual damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' infringing conduct, as alleged herein.

184.    Asia TV will continue to suffer actual damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' infringing conduct, as alleged herein, unless restrained by law.

185.    On information and belief, Plaintiffs/Counterclaim-Defendants have generated profits from publicly performing the Works, which they are not entitled to keep at law or in equity.

186.    Asia TV has been and continues to be irreparably harmed as a result of Plaintiffs/Counterclaim-Defendants' acts of copyright infringement, as alleged herein.

187.    Unless restrained by the Court, Plaintiffs/Counterclaim-Defendants will continue to engage in these infringing acts.

188.    Asia TV has no adequate remedy at law.

**COUNT II**
*(Copyright Infringement Under 17 U.S.C. § 501 – ▆▆▆▆▆▆▆ Viewing)*

189.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

190.    Counterclaim Count II is for copyright infringement in violation of 17 U.S.C. § 501.

191.    Asia TV is and has been the legal and/or beneficial owner of the Works at all relevant time periods.

192.    The Works are original works of authorship that have been fixed in a tangible medium of expression and constitute copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

193.    The Works are not United States works within the meaning of Section 101 of the Copyright Act, 17 U.S.C. § 101.

194.    Pursuant to Section 411 of the Copyright Act, 17 U.S.C. § 411, because the Works are not United States works, they are not required to be registered prior to instituting an action for copyright infringement

195.    Pursuant to 17 U.S.C. § 106, Asia TV has the exclusive right to, *inter alia*, perform publicly the Works.

39

196.    Beyond the scope of the licenses granted by Asia TV and without any other authorization, Plaintiffs/Counterclaim-Defendants unlawfully exercised Asia TV's exclusive rights with respect to the Works when they publicly performed the Works to subscribers ███████ ████████████████████.

197.    Plaintiffs/Counterclaim-Defendants continue to unlawfully exercise Asia TV's exclusive rights with respect to the Works by publicly performing the Works to their subscribers ████████████████████████ on a continuous and ongoing basis.

198.    Plaintiffs/Counterclaim-Defendants have committed and are committing each of the foregoing acts with the full knowledge that they are not authorized to do so.

199.    Plaintiffs/Counterclaim-Defendants' conduct constitutes willful copyright infringement.

200.    Asia TV has suffered actual damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' infringing conduct, as alleged herein.

201.    Asia TV will continue to suffer actual damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' infringing conduct, as alleged herein, unless restrained by law.

202.    On information and belief, Plaintiffs/Counterclaim-Defendants have generated profits from publicly performing the Works, which they are not entitled to keep at law or in equity.

203.    Asia TV has been and continues to be irreparably harmed as a result of Plaintiffs/Counterclaim-Defendants' acts of copyright infringement, as alleged herein.

204.    Unless restrained by the Court, Plaintiffs/Counterclaim-Defendants will continue to engage in these infringing acts.

205.    Asia TV has no adequate remedy at law.

## COUNT III

### (*Breach of Contract Under New York Common Law – Zee Cinemalu*)

206.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

207.     Counterclaim Count III is for breach of contract under New York common law.

208.     Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the International Affiliation Agreement and Multi-Channel Term Sheet.

209.     Plaintiffs/Counterclaim-Defendants are breaching the International Affiliation Agreement, as amended by the Multi-Channel Term Sheet, by failing to include the Zee Cinemalu channel in every package that includes the Zee Telugu channel, as required by the Twelfth Amendment to the International Affiliation Agreement.

210.     Plaintiffs/Counterclaim-Defendants' failure to include the Zee Cinemalu channel in every package that includes the Zee Telugu channel constitutes a material breach of the International Affiliation Agreement, as amended by the Multi-Channel Term Sheet.

211.     Plaintiffs/Counterclaim-Defendants have not cured their material breach of the International Affiliation Agreement, as amended by the Multi-Channel Term Sheet.

212.     Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of International Affiliation Agreement, as amended by the Multi-Channel Term Sheet.

213.     Asia TV has suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breach of the International Affiliation Agreement, as amended by the Multi-Channel Term Sheet, as alleged herein.

214.    Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

## COUNT IV
*(Breach of Contract Under New York Common Law – Subscriber Reports)*

215.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

216.    Counterclaim Count IV is for breach of contract under New York common law.

217.    Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the International Affiliation Agreement, as amended.

218.    Plaintiffs/Counterclaim-Defendants are breaching the International Affiliation Agreement by failing to comply with their obligation under Section 6.1 of the International Affiliation Agreement to provide Asia TV each month with "███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████." 

219.    Plaintiffs/Counterclaim-Defendants' failure to comply with Section 6.1 of the International Affiliation Agreement constitutes a material breach of the International Affiliation Agreement.

220.    Plaintiffs/Counterclaim-Defendants have not cured their material breach of the International Affiliation Agreement.

221.    Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of the International Affiliation Agreement.

222.    Asia TV has suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breach of the International Affiliation Agreement, as alleged herein.

223.    Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

### COUNT V
*(Breach of Contract Under New York Common Law – ▉▉▉▉▉▉▉▉▉▉▉)*

224.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

225.    Counterclaim Count V is for breach of contract under New York common law.

226.    Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the Affiliation Agreement and International Affiliation Agreement, both as amended.

227.    Plaintiffs/Counterclaim-Defendants are breaching the Affiliation Agreement and International Affiliation Agreement by allowing Asia TV's licensed content to be accessed ▉▉▉▉ ▉▉▉▉▉▉.

228.    Plaintiffs/Counterclaim-Defendants' failure to restrict access to Asia TV's licensed content to ▉▉▉▉▉▉▉▉ constitutes material breaches of the Affiliation Agreement and International Affiliation Agreement.

229.    Plaintiffs/Counterclaim-Defendants have not cured their material breaches of the Affiliation Agreement and International Affiliation Agreement.

230.    Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breaches of the Affiliation Agreement and International Affiliation Agreement.

231.    Asia TV has suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breaches of the Affiliation Agreement and International Affiliation Agreement, as alleged herein.

232.    Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

## COUNT VI
*(Breach of Contract Under New York Common Law – Asia TV ▮▮▮▮▮▮ Viewing)*

233.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

234.    Counterclaim Count VI is for breach of contract under New York common law.

235.    Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the Affiliation Agreement and International Affiliation Agreement, both as amended.

236.    Plaintiffs/Counterclaim-Defendants are breaching the Affiliation Agreement and International Affiliation Agreement by permitting their subscribers to access Asia TV's licensed content ▮▮▮▮▮▮▮▮.

237.    Plaintiffs/Counterclaim-Defendants' failure to abide by the ▮▮▮▮▮▮▮▮ of the licenses granted in the Affiliation Agreement and International Affiliation Agreement constitute material breaches of those agreements.

238.    Plaintiffs/Counterclaim-Defendants have not cured their material breaches of the Affiliation Agreement and International Affiliation Agreement.

239.    Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breaches of the Affiliation Agreement and International Affiliation Agreement.

240.     Asia TV has suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breaches of the Affiliation Agreement and International Affiliation Agreement, as alleged herein.

241.     Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

242.     Asia TV has been and continues to be irreparably harmed as a result of Plaintiffs/Counterclaim-Defendants' material breaches of the Affiliation Agreement and International Affiliation Agreement, as alleged herein.

243.     Unless restrained by the Court, Plaintiffs/Counterclaim-Defendants will continue to engage in these unauthorized acts.

244.     Asia TV has no adequate remedy at law.

## COUNT VII
*(Breach of Contract Under New York Common Law – Z Living* ▮▮▮▮▮▮▮▮*)*

245.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

246.     Counterclaim Count VII is for breach of contract under New York common law.

247.     Living Communications duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the Z Living Agreement, as amended.

248.     Plaintiffs/Counterclaim-Defendants are breaching the Z Living Agreement by permitting their subscribers to access Z Living's licensed content ▮▮▮▮▮▮▮▮.

249.     Plaintiffs/Counterclaim-Defendants' failure to abide by the ▮▮▮▮▮▮▮▮ of the licenses granted in the Z Living Agreement constitutes a material breach of that agreement.

250.     Plaintiffs/Counterclaim-Defendants have not cured their material breach of the Z Living Agreement.

251.     Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of the Z Living Agreement.

252.     Living Communications has suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breaches of the Z Living Agreement, as alleged herein.

253.     Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

254.     Living Communications has been and continues to be irreparably harmed as a result of Plaintiffs/Counterclaim-Defendants' material breaches of the Z Living Agreement, as alleged herein.

255.     Unless restrained by the Court, Plaintiffs/Counterclaim-Defendants will continue to engage in these unauthorized acts.

256.     Living Communications has no adequate remedy at law.

## COUNT VIII
### (*Declaratory Judgment of a Binding Agreement Under New York Common Law*)

257.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

258.     Counterclaim Count VIII is for a declaratory judgment that as of June 6, 2019, the parties had agreed on all material terms of a valid, binding, and enforceable agreement ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████.

259.    An actual, justiciable controversy has arisen and now exists between the parties concerning whether the parties' extensive discussions of a business resolution, spanning from December 2018 through June 6, 2019, resulted in a valid, binding, and enforceable agreement.

260.    Counts II and III of Plaintiffs/Counterclaim-Defendants' Second Amended Complaint allege that Asia TV is in breach of the parties' Agreements, and have committed copyright infringement, by ███████████████████████████████████████

███. Count IV of Plaintiffs/Counterclaim-Defendants' Second Amended Complaint alleges that Asia Today and Living Communications are in breach of the Zee TV Term Sheet for failing to ███

███████████ associated with the Z Living Channel. The basis for these Counts is that the parties did not reach a binding settlement agreement.

261.    The requested declaratory judgment is therefore necessary and appropriate at this time so that the parties can determine their rights and obligations under the Agreements, with respect to the ███ service, and with respect to Counts II, III, and IV of the Second Amended Complaint.

## COUNT IX
*(Declaration of Non-Infringement – Asia TV Defendants)*

262.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

263.    Count IX is for a declaratory judgement that Asia TV has not infringed any copyright rights in the Works in which Plaintiffs/Counterclaim-Defendants purport to have a copyright interest.

264.    An actual, justiciable controversy has arisen and now exists between the parties concerning whether Asia TV is infringing the copyright in Works in which Plaintiffs/Counterclaim-Defendants' purport to have an interest.

47

265.   In particular, Count III of Plaintiffs/Counterclaim-Defendants' Second Amended Complaint alleges that Asia TV has committed copyright infringement by ██████████████ ███████████████████████████████.

266.   The parties entered into a binding agreement on June 6, 2019, under which Plaintiffs/Counterclaim-Defendants ████████████████████████████ ██████████████████████████████████████████████ ████████████████.

267.   The requested declaration is necessary and appropriate at this time so that the parties can determine their rights and obligations under the Agreements.

### IN THE ALTERNATIVE, COUNT X
*(Breach of Contract Under New York Common Law – Zee Familia)*

268.   Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

269.   Counterclaim Count X is for breach of contract under New York common law.

270.   Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the Affiliation Agreement, as amended by the Zee TV Term Sheet.

271.   Plaintiffs/Counterclaim-Defendants breached the Affiliation Agreement (as amended) by ████████████████████████████████████████████ ████████████████.

272.   Plaintiffs/Counterclaim-Defendants' failure to timely launch Zee Familia constitutes a material breach of the Affiliation Agreement, as amended.

273.   Plaintiffs/Counterclaim-Defendants have not cured their material breach of the Affiliation Agreement.

274.    On information and belief, Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of the Affiliation Agreement.

275.    Defendants/Counterclaim-Plaintiffs have suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breach of the Affiliation Agreement, as alleged herein.

276.    Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

## IN THE ALTERNATIVE, COUNT XI
*(Breach of Contract Under New York Common Law –* ██████████████ *)*

271.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

272.    Counterclaim Count XI is for breach of contract under New York common law.

273.    Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the International Affiliation Agreement, as amended by the Multi-Channel Term Sheet.

274.    Plaintiffs/Counterclaim-Defendants breached the International Affiliation Agreement (as amended) by failing ██████████████████ by November 30, 2020, as required by Section 4 of the Multi-Channel Term Sheet.

275.    Plaintiffs/Counterclaim-Defendants' failure to ██ ██ ██ ████ ████ constitutes a material breach of the International Affiliation Agreement, as amended.

276.    Plaintiffs/Counterclaim-Defendants have not cured their material breach of the International Affiliation Agreement.

277.    On information and belief, Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of the International Affiliation Agreement.

278.    Defendants/Counterclaim-Plaintiffs have suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breach of the International Affiliation Agreement, as alleged herein.

279.    Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

## IN THE ALTERNATIVE, COUNT XII
*(Breach of Contract Under New York Common Law* ████████████████ )

280.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

281.    Counterclaim Count XII is for breach of contract under New York common law.

282.    Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the International Affiliation Agreement, as amended by the Multi-Channel Term Sheet.

283.    Plaintiffs/Counterclaim-Defendants breached the International Affiliation Agreement (as amended) by failing to ███████████████████ by November 30, 2020, as required by Section 4 of the Multi-Channel Term Sheet.

284.    Plaintiffs/Counterclaim-Defendants' failure to ████████████████ ██████ constitutes a material breach of the International Affiliation Agreement, as amended.

285.    Plaintiffs/Counterclaim-Defendants have not cured their material breach of the International Affiliation Agreement.

286.    On information and belief, Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of the International Affiliation Agreement.

287.     Defendants/Counterclaim-Plaintiffs have suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breach of the International Affiliation Agreement, as alleged herein.

288.     Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

### COUNT XIII
*(Breach of Contract Under New York Common Law – Failure to Pay* ▮▮▮▮▮▮ *Under Affiliation Agreement (As Amended))*

289.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

290.     Counterclaim Count XIII is for breach of contract under New York common law.

291.     Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the Affiliation Agreement (as amended).

292.     Plaintiffs/Counterclaim-Defendants breached the Affiliation Agreement (as amended) by failing and continuing to refuse to pay ▮▮▮▮▮▮ owed thereunder.

293.     Plaintiffs/Counterclaim-Defendants' failure to pay outstanding ▮▮▮▮▮▮ constitutes a material breach of both the Affiliation Agreement (as amended).

294.     Plaintiffs/Counterclaim-Defendants have not cured their material breach of the Affiliation Agreement.

295.     On information and belief, Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of the Affiliation Agreement.

296.     Defendants/Counterclaim-Plaintiffs have suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breach of the Affiliation Agreement, as alleged herein.

297.   Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

## COUNT XIV
*(Breach of Contract Under New York Common Law – Failure to Pay* ▮▮▮▮▮▮ *Under International Affiliation Agreement (As Amended))*

280.   Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

281.   Counterclaim Count XIV is for breach of contract under New York common law.

282.   Asia TV duly complied with (and continues complying with), and performed (and continues performing), all of its obligations under the International Affiliation Agreement (as amended).

283.   Plaintiffs/Counterclaim-Defendants breached the International Affiliation Agreement (as amended) by failing and continuing to refuse to pay ▮▮▮▮▮▮ owed thereunder.

284.   Plaintiffs/Counterclaim-Defendants' failure to pay outstanding ▮▮▮▮▮▮ constitutes a material breach of both the International Affiliation Agreement (as amended).

285.   Plaintiffs/Counterclaim-Defendants have not cured their material breach of the International Affiliation Agreement.

286.   On information and belief, Plaintiffs/Counterclaim-Defendants do not intend to, and will not, cure their material breach of the International Affiliation Agreement.

287.   Defendants/Counterclaim-Plaintiffs have suffered, and will continue to suffer, damages directly and proximately caused by Plaintiffs/Counterclaim-Defendants' material breach of the International Affiliation Agreement, as alleged herein.

288.     Plaintiffs/Counterclaim-Defendants' conduct alleged herein constitutes a breach of contract under New York law.

## COUNT XV
*(Declaratory Judgment of No Material Breach – Asia TV Defendants)*

277.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1-171 of the Counterclaims as though set forth fully herein.

278.     Counterclaim Count XV is for a declaratory judgment that Asia TV is not in material breach of the Agreements by ████████████████████████████████ ██████████ or by not providing DISH with requested allocated advertising time on the Zee TV HD, Zee News, Zee Bangla and Zee Marathi channels.

279.     An actual, justiciable controversy has arisen and now exists between the parties concerning whether Asia TV's right to ████████████████████████████████ ███████████████████ and whether and to what extent Asia TV is required to provide DISH with advertising time on the Zee TV HD, Zee News, Zee Bangla and Zee Marathi channels.

280.     Such a declaration is necessary and appropriate at this time so that the parties can determine their rights and obligations under the Agreements.

## COUNT XVI
*(Promissory Estoppel Under New York Common Law – Asia TV)*

281.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

282.     Counterclaim Count XVI is a claim for promissory estoppel by Asia TV.

283.     As detailed above, DISH expressly promised that it agreed to extend the deadline for Asia TV to cease ███████████████████████████████████. DISH did so at least as early as December 2018, and repeated its promise on May 30, 2019.

284.    Asia TV's reliance on these and other promises was reasonable and foreseeable. Indeed, the Zee TV and Multi-Channel Term Sheets ███████████████████████. *See* Zee TV Term Sheet Section 25; Multi-Channel Term Sheet Section 24. DISH reiterated its promise of a one-year extension just one day prior to that date, on May 30, 2019. Moreover, DISH had consistently expressed its agreement to a one-year extension since December 2018. In addition, at the time Asia TV relied on DISH's representations, DISH had already requested, and Asia TV had provided, ████████████████████████████████. Asia TV had no reason to doubt the sincerity of DISH's assurances, particularly in light of the significant steps the parties had taken in relation to other agreed-upon terms in the same deal.

285.    As a direct and proximate result of reasonably relying on DISH's promise to allow Asia TV to ██████████████████████████, Asia TV has been damaged in an amount to be proven at trial.

### COUNT XVII
*(Declaratory Judgment of No Material Breach – Living Communications and ATL)*

286.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

287.    Counterclaim Count XVII is for a declaratory judgment that Living Communications is not in material breach of any obligation to pay ████████████ associated with the Z Living channel.

288.    An actual, justiciable controversy has arisen and now exists between the parties concerning Living Communications' obligations, if any to pay ██████████████ associated with the Z Living channel.

289.    Such a declaration is necessary and appropriate at this time so that the parties can determine their rights and obligations under the Z Living Agreement.

## COUNT XVIII
### (*Promissory Estoppel – Living Communications*)

290.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

291.     Counterclaim Count XVIII is a claim for promissory estoppel by Living Communications.

292.     As detailed above, DISH was aware of Z Living's ███████████ as early as November 2018 and since that time it was aware that Living Communications could not ████ ███████████████████████. As further detailed, DISH expressly promised that it would ████████████████████████████████████████████.

293.     Living Communications' reliance on these and other promises was reasonable and foreseeable. Indeed, DISH confirmed in writing that it was ready to formally conclude the parties' business resolution at Defendants/Counterclaim-Plaintiffs' convenience and agreed to ███████████████████████.

294.     As a direct and proximate result of reasonably relying on DISH's promises to ██████████████████████, Living Communications has been damaged in an amount to be proven at trial.

## COUNT XIX
### (*Breach of the Implied Covenant of Good Faith and Fair Dealing under New York Common Law – Living Communications*)

295.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

296.     Counterclaim Count XIX is a claim for the breach of the implied covenant of good faith and fair dealing.

297.    As discussed above, Living Communications consistently informed DISH, beginning in October 2018, that it intended to ███████████████████████████ ███████████████████████████████████████████████████████████. Despite being aware of these circumstances, DISH insisted that Living Communications could not ████████ the Z Living Channel.

298.    Living Communications thereafter requested, on multiple occasions, that DISH exercise its express contractual right to ███████████████████████████████ ████████████, which would eliminate the █████████.

299.    Despite Living Communications' requests, and DISH's awareness of █████ ████████████████████████████████████, DISH has refused to ███████████████ ████████.

300.    DISH's failure to ██████████████████████, and thereby eliminate the █████████, constitutes an act of bad faith. The Z Living Agreement gives DISH the express contractual right to █████████████████████████████████████████████. Implied in the Z Living Agreement is the obligation that DISH will act in good faith when deciding whether to exercise that right.  Despite being aware that Living Communications could not ████████████, DISH has insisted that Living Communications refrain from ████████████ ████████, while at the same time refusing to ████████████████.

301.    DISH's refusal to ████████████████ deprives Living Communications of the benefits of the Z Living Agreement—namely, the parties' agreement that Living Communications could be ██████████████████████████████████████████.

302.    DISH thereby deprived and intended to deprive Living Communications of the benefits of the Z Living Agreement.

303.    DISH therefore breached the implied covenant of good faith and fair dealing.

304.    As a direct and proximate result of DISH's breach of the implied covenant of good faith and fair dealing, Living Communications has been damaged in an amount to be proven at trial.

## COUNT XX
*(Breach of the Implied Covenant of Good Faith and Fair Dealing under New York Common Law – Asia TV)*

305.    Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

306.    Counterclaim Count XX is a claim for the breach of the implied covenant of good faith and fair dealing.

307.    Implied in the Agreements is an obligation for DISH and Asia TV to negotiate and resolve disputes in good faith. For example, the Affiliation Agreement provides a ███████████, and offers relief from the ████████████████████████. The International Affiliation Agreement provides a similar ████████████. And at the January 14, 2019 hearing in this case, counsel for DISH conceded that an implied duty of good faith and fair dealing attaches to the cure provisions in both the Affiliation Agreement and the International Affiliation Agreement. *See* Dkt. No. 48, Jan. 14 Hr'g Tr. at 11. Similarly, the Affiliation Agreement and International Affiliation Agreement contain provisions contemplating that the parties will memorialize modifications and amendments in a signed writing. Those provisions imply a duty of good faith and fair dealing to memorialize agreed-upon modifications and amendments. DISH breached the duty of good faith and fair dealing implied in the Agreements.

308.     As discussed above, after six months of extensive negotiations, the parties had agreed to all material terms of an agreement on June 6, 2019, and on that date, a binding contract between the parties was formed.

309.     Shortly after the parties entered into this contract, Michael Schwimmer, Sling TV L.L.C.'s newly-hired Executive Vice President of International, Business Development and Strategy caused DISH to renege on the parties' June 6, 2019 agreement and propose entirely new terms that were significantly different from those to which the parties had already agreed.

310.     On information and belief, Mr. Schwimmer, in and through his role as an executive at Sling TV L.L.C., did so due to ███████████████ and for the purpose of depriving Asia TV of the benefits of the Agreements—namely, its right to a good faith resolution of the noticed breaches and agreed upon deal terms, including but not limited to the ██████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████.

311.     DISH thereby deprived and intended to deprive Asia TV of the benefits of the Agreements.

312.     DISH therefore breached the implied covenant of good faith and fair dealing.

313.     As a direct and proximate result of DISH's breach of the implied covenant of good faith and fair dealing, Asia TV has been damaged in an amount to be proven at trial.

## COUNT XXI
### (*Attorneys' Fees*)

314.     Defendants/Counterclaim-Plaintiffs incorporate the allegations set forth in paragraphs 1–171 of the Counterclaims as though set forth fully herein.

315.     Counterclaim Count XXI is a claim for attorneys' fees.

316.   Section 10.15 of the Affiliation Agreement, entitled ██████████ provides: █



██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████."

317.   Asia TV brings this action to, among other things, enforce the Affiliation Agreement.

318.   Asia TV is accordingly entitled to recover its costs, expenses, and reasonable attorney fees incurred in connection with this action.

## ANSWER TO SECOND AMENDED COMPLAINT

### GENERAL DENIAL

Except as otherwise expressly admitted herein, Defendants deny each and every allegation contained in the Second Amended Complaint ("SAC"), including, without limitation, any allegations contained in the preamble, introduction, headings or subheadings of the SAC, and specifically deny any liability to Plaintiffs.  Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, any allegations in the Second Amended Complaint to which no response is required shall be considered denied.  Defendants expressly reserve the right to seek to amend and/or supplement this Answer as may be necessary.

### RESPONSE TO SPECIFIC ALLEGATIONS

### INTRODUCTION

1.      Asia TV Defendants deny the allegations in the first sentence of paragraph one of the SAC.  Regarding the second sentence in paragraph one of the SAC, Asia TV Defendants admits that Asia TV and Plaintiffs have been "doing business together" for "more than 20 years."  Asia TV Defendants deny the remaining allegations in the second sentence of paragraph one of the SAC.  Asia TV Defendants deny the allegations in the third sentence of paragraph one of the SAC. Living Communications avers that the allegations in paragraph 1 of the SAC do not relate to it and therefore no response is required.

2.      Asia TV Defendants deny the allegations in the first, second, fourth, and fifth sentences, respectively, in paragraph two of the SAC.  Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in the third sentence in paragraph two of the SAC and, therefore, deny the same.  Asia TV Defendants deny the allegations in the sixth sentence of paragraph 2 except admit that Asia TV notified DISH it

was in breach of the relevant agreements on three separate occasions in letters date November 9, 2018; November 21, 2018; and December 3, 2018. With respect to the seventh sentence in paragraph 2 of the SAC, Asia TV Defendants aver that Asia TV stated that additional breach notices could potentially be sent in the future. Living Communications avers that the allegations in paragraph 2 of the SAC do not relate to it and therefore no response is required.

3. Denied as to Asia TV Defendants. Living Communications avers that the allegations in paragraph 3 of the SAC do not relate to it and therefore no response is required.

4. Asia TV Defendants deny the allegations in sentences one, two, three, four, five, six, and seven of paragraph four of the SAC, except that with respect to the allegations relating to Defendant Living Communications, Asia TV Defendants aver that these allegations do not relate to them and therefore no response is required. Living Communications denies the allegations in the fourth, fifth and sixth sentences of paragraph four of the SAC and avers that DISH waived ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ for the Z Living channel. With respect to the allegations in the first, second, third and seventh sentences of paragraph four of the SAC relating to the Asia TV Defendants, Living Communications avers that these allegations do not relate to it and therefore no response is required. With respect to the last sentence of paragraph four of the SAC, Asia TV Defendants and Living Communications aver that pursuant to Section 1 of the March 18, 2011 Guaranty between DISH Network, L.L.C. and ATL, ATL "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ specifically identified in the Guaranty.

5. To the extent the allegations in paragraph five of the SAC suggest or imply that Asia TV Defendants have engaged in any wrongdoing or that DISH is not in material breach of the parties' contracts, denied; with respect to the last sentence of paragraph five, admitted.

Otherwise, Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph five of the SAC and, therefore, deny the same. Living Communications avers that the allegations in paragraph five of the SAC do not relate to it and therefore no response is required.

6.      To the extent the allegations in paragraph six of the SAC suggest or imply that Asia TV Defendants or Living Communications have engaged in any wrongdoing, denied; otherwise, Asia TV Defendants and Living Communications lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph six of the SAC and, therefore, deny the same.

7.      To the extent the allegations in the first sentence of paragraph seven of the SAC suggest or imply that Asia TV Defendants have engaged in any wrongdoing, denied.  Asia TV Defendants deny the allegations in the second sentence of paragraph seven of the SAC; with respect to the third sentence of paragraph seven, admitted. As to the remaining allegations in paragraph seven of the SAC, Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations and, therefore, deny the same.  Living Communications avers that the allegations in paragraph seven of the SAC do not relate to it and therefore no response is required.

## THE PARTIES

8.      Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph eight of the SAC and, therefore, deny the same.

9.      Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph nine of the SAC and, therefore, deny the same.

10.     Asia TV admits the allegations in the first sentence of paragraph 10 of the SAC and avers that it is the exclusive licensee of certain copyrighted content that airs in the United States. To the extent there remain allegations in paragraph 10 of the SAC that require a response, denied. ATL and Living Communications aver that the allegations in paragraph 10 of the SAC do not relate to them and therefore no response is required.

11.     ATL admits that it is a company incorporated under the laws of the Republic of Mauritius where it also has its principal place of business.  ATL denies the allegations in the second sentence of paragraph 11 of the SAC and avers that it licenses rights to distribute certain programming in the United States.  ATL denies the allegations in the third sentence of paragraph 11 of the SAC.  With respect to the fourth sentence of paragraph 11 of the SAC, ATL avers that pursuant to Section 1 of the March 18, 2011, Guaranty between DISH Network, L.L.C. and ATL, ATL ███████████████████████████████████████████████ ███████████████████████████████████████████████ specifically identified in the Guaranty, and respectfully refers the Court to the terms of the Guaranty.  Asia TV and Living Communications aver that the allegations in paragraph 11 of the SAC do not relate to them and therefore no response is required.

12.     Living Communications admits the allegations in the first sentence of paragraph 12 of the SAC.  Asia TV Defendants aver that the allegations contained in the first sentence of paragraph 12 of the SAC do not relate to them and therefore no response is required.  With respect to the second and third sentences of paragraph 12 of the SAC, Defendants deny the characterization of the agreements in paragraph 12 of the SAC, and respectfully refer the Court to the governing agreements.

## JURISDICTION AND VENUE

13.     Defendants do not contest that this Court has subject-matter jurisdiction over Plaintiffs' claims in the SAC.

14.     To the extent the allegations in paragraph 14 of the SAC suggest or imply that Defendants have engaged in any wrongdoing, denied; otherwise, Defendants do not contest personal jurisdiction or venue in this Court.

## STATEMENT OF FACTS

## I.      HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

15.     Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 15 of the SAC and, therefore, deny the same.

16.     Asia TV Defendants deny the allegations in the first and second sentences in paragraph 16 of the SAC except admit that Asia TV licenses certain South Asian programming to DISH in the United States.  Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in the third sentence of paragraph 16 of the SAC, and, therefore, deny the same. Asia TV Defendants admit the allegations in the fourth sentence in paragraph 16 of the SAC.  Living Communications avers that the allegations in paragraph 16 of the SAC do not relate to it and therefore no response is required.

17.     Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 17 of the SAC and, therefore, deny the same. Living Communications avers that the allegations in paragraph 17 of the SAC do not relate to it and therefore no response is required.

## II.     HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

18.     Asia TV Defendants deny the allegations in paragraph 18 of the SAC and aver that the agreements speak for themselves, and respectfully refer the Court to the governing agreements.

Living Communications avers that the allegations in paragraph 18 of the SAC do not relate to it and therefore no response is required.

19.     Asia TV Defendants deny the allegations in paragraph 19 of the SAC and aver that the agreements speak for themselves, and respectfully refer the Court to the governing agreements. Living Communications avers that the allegations in paragraph 19 of the SAC do not relate to it and therefore no response is required.

20.     Asia TV Defendants deny the characterization of the agreements in paragraph 20 of the SAC, and respectfully refer the Court to the governing agreements. Living Communications avers that the allegations in paragraph 20 of the SAC do not relate to it and therefore no response is required.

21.     Asia TV Defendants deny the characterization of the agreements in paragraph 21 of the SAC, and respectfully refer the Court to the governing agreements. Living Communications avers that the allegations in paragraph 21 of the SAC do not relate to it and therefore no response is required.

22.     Asia TV Defendants deny the characterization of the agreements in paragraph 22 of the SAC, and respectfully refer the Court to the governing agreements. Living Communications avers that the allegations in paragraph 22 of the SAC do not relate to it and therefore no response is required.

23.     Asia TV Defendants deny the characterization of the agreements in paragraph 23 of the SAC, and respectfully refer the Court to the governing agreements. Living Communications avers that the allegations in paragraph 23 of the SAC do not relate to it and therefore no response is required.

24.     Defendants deny the characterization of the Guaranty in paragraph 24 of the SAC, and respectfully refer the Court to the governing agreement.

## III.    HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

25.     Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 25 of the SAC and, therefore, deny the same. Living Communications avers that the allegations in paragraph 25 of the SAC do not relate to it and therefore no response is required.

26.     With respect to the allegations in the final sentence in paragraph 26 of the SAC, Asia TV Defendants aver that Asia TV stated that additional breach notices could potentially be sent in the future.  Asia TV Defendants deny all other allegations in paragraph 26 of the SAC. Living Communications avers that the allegations in paragraph 26 of the SAC do not relate to it and therefore no response is required.

### A.     Header To Which No Response Is Required, Therefore Denied

27.     Regarding the allegations in the first sentence in paragraph 27 of the SAC, Asia TV Defendants admit that Asia TV sent a "notice to DISH on November 9, 2018"; however, Asia TV Defendants deny that this notice was "pretextual."  With respect to the remaining allegations in paragraph 27 of the SAC, Asia TV Defendants deny the characterization of the agreements and correspondence in paragraph 27 of the SAC, and respectfully refer the Court to the governing agreements and correspondence.  Living Communications avers that the allegations in paragraph 27 of the SAC do not relate to it and therefore no response is required.

28.     Denied as to Asia TV Defendants.  Living Communications avers that the allegations in paragraph 28 of the SAC do not relate to it and therefore no response is required.

29.     Asia TV Defendants admit that, "[o]n December 3, 2018, Asia TV sent DISH a letter asserting that the [] packaging breach had not been cured."  Asia TV Defendants deny the remaining allegations in the first sentence in paragraph 29 of the SAC.  Regarding the remaining allegations in paragraph 29 of the SAC, Asia TV Defendants deny DISH's characterization of the correspondence and specifically deny all allegations that DISH has cured the breach.  Living Communications avers that the allegations in paragraph 29 of the SAC do not relate to it and therefore no response is required.

30.     Asia TV Defendants admit the allegations in the first sentence in paragraph 30 of the SAC that, "[o]n December 20, 2018, Asia TV sent DISH an email claiming again that this alleged breach had not been cured."  Asia TV Defendants deny the remaining allegations in the first sentence in paragraph 30 of the SAC.  Asia TV Defendants deny the allegations in the second sentence in paragraph 30 of the SAC and aver that Asia TV stated it would "send [DISH] the documentation proving that you have not cured the said breaches." Asia TV Defendants admit the allegations in the third and fourth sentences, respectively, in paragraph 30 of the SAC, except they deny that Zee Telugu is an a la carte offering.  Asia TV Defendants deny the allegations in the fifth sentence in paragraph 30 of the SAC.  Asia TV Defendants deny the allegations in the last sentence of paragraph 30 of the SAC.  Living Communications avers that the allegations in paragraph 30 of the SAC do not relate to it and therefore no response is required.

**B.      Header To Which No Response Is Required, Therefore Denied**

31.     Regarding the allegations in the first sentence in paragraph 31 of the SAC, Asia TV Defendants admit that Asia TV sent DISH a "breach notice" on November 21, 2018; however, Asia TV Defendants deny that this notice was "pretextual."  Asia TV Defendants deny the characterization of the November 21, 2018 letter in the remaining allegations in paragraph 30 of

the SAC, and respectfully refer the Court to the November 21 letter.  Living Communications avers that the allegations in paragraph 31 of the SAC do not relate to it and therefore no response is required.

32.     Asia TV Defendants deny the allegations in the second, third, and final sentences in paragraph 32 of the SAC.  With respect to the first sentence in paragraph 32 of the SAC, Defendants respectfully refer the Court to the December 5, 2018 letter.  Living Communications avers that the allegations in paragraph 32 of the SAC do not relate to it and therefore no response is required.

33.     Asia TV Defendants deny the allegations in the final sentence in paragraph 33 of the SAC.  Asia TV Defendants admit all other allegations in paragraph 33 of the SAC except aver that Asia TV stated it would "send [DISH] the documentation proving that you have not cured the said breaches."  Living Communications avers that the allegations in paragraph 33 of the SAC do not relate to it and therefore no response is required.

### C.     Header To Which No Response Is Required, Therefore Denied

34.     Regarding the allegations in the first sentence of paragraph 34 of the SAC, Asia TV Defendants admit that, "[o]n December 4, 2018, Asia TV sent DISH a third [] breach notice"; however, Asia TV Defendants deny this notice was "pretextual." Regarding the allegations in the second sentence of paragraph 34 of the SAC, Asia TV Defendants respectfully refer the Court to the December 4, 2018 letter.  Living Communications avers that the allegations in paragraph 34 of the SAC do not relate to it and therefore no response is required.

35.     Denied as to Asia TV Defendants.  Living Communications avers that the allegations in paragraph 35 of the SAC do not relate to it and therefore no response is required.

36.     Asia TV Defendants deny the characterization of the agreements in paragraph 36 of the SAC, and respectfully refer the Court to the governing agreements.  Living Communications avers that the allegations in paragraph 36 of the SAC do not relate to it and therefore no response is required.

37.     Asia TV Defendants deny the characterization of the agreements in paragraph 37 of the SAC, and respectfully refer the Court to the governing agreements.  Living Communications avers that the allegations in paragraph 37 of the SAC do not relate to it and therefore no response is required.

38.     To the extent the allegations in paragraph 38 of the SAC suggest or imply that Asia TV Defendants engaged in any wrongdoing or had an obligation to provide Plaintiffs with any "assurances requested," denied.  Living Communications avers that the allegations in paragraph 38 of the SAC do not relate to it and therefore no response is required.

39.     Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in the first sentence in paragraph 39 of the SAC and, therefore, deny the same.  Asia TV Defendants deny the allegations in the second sentence in paragraph 39 of the SAC.  Living Communications avers that the allegations in paragraph 39 of the SAC do not relate to it and therefore no response is required.

## IV.     HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

40.     Denied as to Asia TV Defendants.  Living Communications avers that the allegations in paragraph 40 of the SAC do not relate to it and therefore no response is required.

41.     Asia TV Defendants deny the allegations in paragraph 41 of the SAC.  Living Communications avers that the allegations in paragraph 40 of the SAC do not relate to it and therefore no response is required.

## V.    HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

42.    Asia TV Defendants deny that the YuppTV agreement was to expire ███████████ ███████ and that they were required to cease distribution to YuppTV after that date. Asia TV Defendants further deny the characterization of the agreements in paragraph 42 of the SAC, and respectfully refer the Court to the governing agreements. Living Communications avers that the allegations in paragraph 42 of the SAC do not relate to it and therefore no response is required.

43.    Asia TV Defendants deny the allegations in paragraph 43 of the SAC except admit that on July 8, 2019 Mr. Gupta informed Mr., Hammer that "DISH already agreed to allow [Asia TV] to ████████████████████████" and that Asia TV "relied on [Dish's] approval of the ████████████████████████████. Living Communications avers that the allegations in paragraph 43 of the SAC do not relate to it and therefore no response is required.

44.    Denied as to Asia TV Defendants. Living Communications avers that the allegations in paragraph 44 of the SAC do not relate to it and therefore no response is required.

45.    Asia TV Defendants deny the allegations in the second sentence in paragraph 45 of the SAC and with respect to the remaining allegations in the paragraph 44 of the SAC, respectfully refer the Court to July 12, 2019, letter for the contents thereof. Living Communications avers that the allegations in paragraph 45 of the SAC do not relate to it and therefore no response is required.

46.    Asia TV Defendants deny the allegations in paragraph 46 of the SAC except admit that in its July 22, 2019 letter, Asia TV stated that Mr. Hammer "confirmed in writing that DISH 'Agreed' that it would 'amend the ████████████████████████████ ██████████████████████████ – an extension of one year'" and that "Asia TV relied on that representation in ███████████████." Living

Communications avers that the allegations in paragraph 46 of the SAC do not relate to it and therefore no response is required.

47.     Asia TV Defendants deny the allegations of paragraph 47 of the SAC. Living Communications avers that the allegations in paragraph 47 of the SAC do not relate to it and therefore no response is required.

48.     Asia TV Defendants deny the last two sentences of paragraph 48 of the SAC.  As to the remainder of the allegations in paragraph 48 of the SAC, Asia TV Defendants deny the characterization of the agreements in paragraph 48 of the SAC, and respectfully refer the Court to the relevant agreements.  Living Communications avers that the allegations in paragraph 48 of the SAC do not relate to it and therefore no response is required.

49.     Defendants deny the allegations in paragraph 49 of the SAC.

50.     Asia TV Defendants deny the characterization of the agreements in paragraph 50 of the SAC and respectfully refer the Court to the governing agreements.  Living Communications avers that the allegations in paragraph 50 of the SAC do not relate to it and therefore no response is required.

51.     To the extent the allegations in the first and second sentences of paragraph 51 of the SAC suggest or imply that Asia TV has engaged in any wrongdoing, denied. Asia TV admits the allegations in the second sentence of paragraph 51 of the SAC as phrased; that DISH and Sling TV moved for a second preliminary injunction against Asia TV on September 20, 2019; and that on November 1, 2019, YuppTV moved to intervene in this action. Asia TV further admits that it entered a Stipulation and Order with YuppTV dated November 13, 2019, in which they agreed that Asia TV would cease distribution to YuppTV as of November 30, 2019. Asia TV further admits that DISH and Sling TV voluntarily withdrew their preliminary injunction motion. ATL

and Living Communications aver that the allegations in paragraph 51 of the SAC do not relate to them and therefore no response is required.

## VI.    HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

52.    Asia TV Defendants deny the characterization of the agreements in paragraph 51 of the SAC and respectfully refer the Court to the governing agreements.  Living Communications avers that the allegations in paragraph 52 of the SAC do not relate to it and therefore no response is required.

53.    Asia TV Defendants admit that DISH notified Asia TV in February 2020 that it intended to use some allocated advertising time under the Agreements and raised technical requirements, but deny that DISH is entitled to allocated advertising time on Zee TV HD under the Parties' Agreements. Asia TV Defendants admit that by March 12, 2020, DISH and Asia TV had worked out the technical details for DISH to use allocated advertising time.  Living Communications avers that the allegations in paragraph 52 of the SAC do not relate to it and therefore no response is required.

54.    Asia TV Defendants deny the characterization of the agreements in paragraph 54 of the SAC and respectfully refer the Court to the governing agreements.  Asia TV Defendants deny that DISH sought to use all allocated advertising time on four channels since March 2020, and deny that DISH is entitled to allocated advertising time on Zee TV HD under the Parties' Agreements. Asia TV Defendants admit that in May 2020, Asia TV provided DISH with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, as DISH requested, but deny that DISH is entitled to allocated advertising time on Zee TV HD under the Parties' Agreements; deny that the Agreements ▬▬▬▬▬▬▬▬▬▬▬ to DISH across four channels because DISH has allocated advertising time on only three channels; and deny that DISH

requested to ██████████████████████ on the channels. Asia TV Defendants admit that in June 2020, Asia TV provided DISH with the allocated advertising time requested by DISH. Asia TV Defendants deny the remaining allegations in paragraph 54 of the SAC. Living Communications avers that the allegations in paragraph 54 of the SAC do not relate to it and therefore no response is required.

55.     Asia TV Defendants lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in the first sentence in paragraph 55 of the SAC and, therefore, deny the same. Asia TV Defendants deny the allegations in the second and third sentences in paragraph 55 of the SAC. Living Communications avers that the allegations in paragraph 55 of the SAC do not relate to it and therefore no response is required.

## VII.  HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

56.     Asia TV Defendants deny the characterization of the agreements in paragraph 56 of the SAC and respectfully refer the Court to the governing agreements. Living Communications avers that the allegations in paragraph 51 of the SAC do not relate to it and therefore no response is required.

57.     Asia TV Defendants deny the allegations in paragraph 57 of the SAC except admit Asia TV is the exclusive licensee of certain copyrighted works in the United States and its territories and commonwealths. Living Communications avers that the allegations in paragraph 57 of the SAC do not relate to it and therefore no response is required.

58.     Denied as to Asia TV Defendants. Living Communications avers that the allegations in paragraph 58 of the SAC do not relate to it and therefore no response is required.

59.     Denied as to Asia TV Defendants. Living Communications avers that the allegations in paragraph 59 of the SAC do not relate to it and therefore no response is required.

## VII.    HEADER TO WHICH NO RESPONSE IS REQUIRED, THEREFORE DENIED

60.    Living Communications denies the characterization of the Z Living Agreement and amendments thereto in paragraph 60 of the SAC, and respectfully refers the court to those agreements. Asia TV Defendants aver that the allegations in paragraph 60 of the SAC do not relate to them and therefore no response is required, except that ATL denies the last sentence of paragraph 60 of the SAC.

61.    Living Communications lacks sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 61 of the SAC and, therefore, denies the same.   Asia TV Defendants aver that the allegations in paragraph 61 of the SAC do not relate to them and therefore no response is required.

62.    Living Communications denies the characterization that it "stopped paying the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and avers that DISH ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Asia TV Defendants aver that the allegations in paragraph 62 of the SAC do not relate to them and therefore no response is required.

63.    With respect to the first sentence of paragraph 63 of the SAC, Living Communications respectfully refers the Court to the July 12, 2019, letter and denies it was in breach at least because DISH had agreed to waive the ▮▮▮▮▮▮▮▮▮▮▮▮▮. With respect to the last sentence of paragraph 58 of the SAC, Living Communications denies the characterization of the Z Living Agreement, and respectfully refers the Court to the governing agreements. Asia TV Defendants aver that the allegations in paragraph 63 of the SAC do not relate to them and therefore no response is required.

64.    Living Communications denies the characterization of its July 22, 2019 letter in paragraph 59 of the SAC, and respectfully refers the Court to the July 22, 2019 letter. Asia TV

Defendants aver that the allegations in paragraph 64 of the SAC do not relate to them and therefore no response is required.

65.     Living Communications denies the last sentence of paragraph 65 of the SAC and avers that DISH ███████████████████████████████████████████. Living Communications denies the characterization of the Z Living Agreement in paragraph 65 of the SAC, and respectfully refers the Court to the governing agreement with respect to the remaining allegations in paragraph 65 of the SAC. Asia TV Defendants aver that the allegations in paragraph 65 of the SAC do not relate to them and therefore no response is required.

## CAUSES OF ACTION

## COUNT I

### (Declaratory Judgment Against Asia TV Defendants)

66.     Defendants repeat, and expressly incorporate by reference, all of their responses to the allegations in paragraphs 1 through 65 of the SAC, as though set forth fully herein.

67.     Admitted as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 67 of the SAC do not relate to it and therefore no response is required.

68.     Admitted as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 68 of the SAC do not relate to it and therefore no response is required.

69.     Paragraph 69 of the SAC states a legal conclusion to which no response is required.

70.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 70 of the SAC do not relate to it and therefore no response is required.

71.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 71 of the SAC do not relate to it and therefore no response is required.

72.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 72 of the SAC do not relate to it and therefore no response is required.

73.     Paragraph 73 of the SAC states a legal conclusion to which no response is required.

74.     Paragraph 74 of the SAC states a legal conclusion to which no response is required.

75.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 75 of the SAC do not relate to it and therefore no response is required.

76.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 76 of the SAC do not relate to it and therefore no response is required.

## COUNT II

### (Breach of Contract -- Against Asia TV Defendants)

77.     Defendants repeat, and expressly incorporate by reference, all of their responses to the allegations in paragraphs 1 through 76 of the SAC, as though set forth fully herein.

78.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 78 of the SAC do not relate to it and therefore no response is required.

79.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 79 of the SAC do not relate to it and therefore no response is required.

80.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 80 of the SAC do not relate to it and therefore no response is required.

81.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 81 of the SAC do not relate to it and therefore no response is required.

## COUNT III

### (Copyright Infringement -- Against Asia TV Defendants)

82.     Defendants repeat, and expressly incorporate by reference, all of their responses to the allegations in paragraphs 1 through 81 of the SAC, as though set forth fully herein.

83.     Asia TV Defendants deny the allegations of paragraph 83 of the SAC, except admit Asia TV is the owner or exclusive licensee for certain content that airs on its channels. Living Communications avers that the allegations in paragraph 83 of the SAC do not relate to it and therefore no response is required.

84.     Asia TV Defendants admit certain copyrighted works to which Asia TV has the exclusive license in the United States and its territories are registered and others are not.  The remaining allegations in paragraph 84 of the SAC state a legal conclusion to which no response is required.  Living Communications avers that the allegations in paragraph 84 of the SAC do not relate to it and therefore no response is required.

85.     Asia TV Defendants deny the allegations in paragraph 85 of the SAC except admit Asia TV licenses certain content to YuppTV pursuant to a valid agreement between DISH and Asia TV.  Living Communications avers that the allegations in paragraph 85 of the SAC do not relate to it and therefore no response is required.

86.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 86 of the SAC do not relate to it and therefore no response is required.

87.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 87 of the SAC do not relate to it and therefore no response is required.

88.     Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 88 of the SAC do not relate to it and therefore no response is required.

89.    Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 89 of the SAC do not relate to it and therefore no response is required.

## COUNT IV

### (Breach of Contract – Against Living Communications and ATL)

90.    Defendants repeat, and expressly incorporate by reference, all of their responses to the allegations in paragraphs 1 through 89 of the SAC, as though set forth fully herein.

91.    Living Communications and ATL respectfully refer the Court to the governing agreements.  Asia TV avers that the allegations in paragraph 91 of the SAC do not relate to it and therefore no response is required.

92.    Living Communications and ATL lack sufficient knowledge and information to form a belief as to the truth or falsity of the allegations in paragraph 86 of the SAC and, therefore, deny the same.  Asia TV avers that the allegations in paragraph 92 of the SAC do not relate to it and therefore no response is required.

93.    Living Communications and ATL deny Living Communications is, or at any time was, "in arrears" because DISH agreed to ████████████████████████.  Asia TV avers that the allegations in paragraph 93 of the SAC do not relate to it and therefore no response is required.

94.    Denied as to Living Communications and ATL.  Asia TV avers that the allegations in paragraph 94 of the SAC do not relate to it and therefore no response is required.

## COUNT V
### (Claims for Attorneys' Fees – Against Asia TV Defendants)

95.    Defendants repeat, and expressly incorporate by reference, all of their responses to the allegations in paragraphs 1 through 94 of the SAC, as though set forth fully herein.

96.    The Asia TV Defendants respectfully refer the court to the governing agreement. Living Communications avers that the allegations in paragraph 96 of the SAC do not relate to it and therefore no response is required.

97.    Paragraph 97 of the SAC states a legal conclusion to which no response is required.

98.    Denied as to Asia TV Defendants.   Living Communications avers that the allegations in paragraph 98 of the SAC do not relate to it and therefore no response is required.

**PLAINTIFF'S PRAYER FOR RELIEF**

Defendants deny that Plaintiffs are entitled to any of the relief they seek.

**AFFIRMATIVE DEFENSES**

As and for Defendants' Affirmative Defenses to the SAC, Defendants hereby assert the following:

First Affirmative Defense

Count I of the SAC fails to state a claim upon which this Court could grant Plaintiffs any relief.

Second Affirmative Defense

Count II of the SAC fails to state a claim upon which this Court could grant Plaintiffs any relief.

Third Affirmative Defense

Count III of the SAC fails to state a claim upon which this Court could grant Plaintiffs any relief.

Fourth Affirmative Defense

Count IV of the SAC fails to state a claim upon which this Court could grant Plaintiffs any relief.

<u>Fifth Affirmative Defense</u>

Count V of the SAC fails to state a claim upon which this Court could grant Plaintiffs any relief.

<u>Sixth Affirmative Defense</u>

Plaintiffs are not entitled to the relief requested in the SAC, in whole or in part, because Plaintiffs have materially breached the Agreements or the Z Living Agreement.

<u>Seventh Affirmative Defense</u>

Plaintiffs are not entitled to the relief requested in the SAC, in whole or in part, because Defendants have not breached the Agreements or the Z Living Agreement.

<u>Eighth Affirmative Defense</u>

Plaintiffs are not entitled to the relief requested in the SAC, in whole or in part, because Defendants have the right to terminate the Agreements and the Z Living Agreement based on Plaintiffs' material breaches thereof.

<u>Ninth Affirmative Defense</u>

Plaintiffs are not entitled to the relief requested in the SAC, in whole or in part, because Defendants have not committed copyright infringement.

<u>Tenth Affirmative Defense</u>

Plaintiffs are not entitled to the relief requested in the SAC, in whole or in part, because they come to Court with unclean hands.

<u>Eleventh Affirmative Defense</u>

Plaintiffs are not entitled to the relief requested in the SAC, in whole or in part, based on the doctrines of waiver, laches, acquiescence, and/or estoppel.

<u>Twelfth Affirmative Defense</u>

Plaintiffs lack standing to bring a claim of copyright infringement against Defendants.

<u>Thirteenth Affirmative Defense</u>

Sling TV L.L.C. lacks standing to bring any claims against Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Defendants/Counterclaim-Plaintiffs hereby pray for the following relief:

A.      A Judgment dismissing the SAC with prejudice;

B.      A Declaration that, by the acts alleged herein, Plaintiffs/Counterclaim-Defendants have committed copyright infringement;

C.      A Declaration that, by the acts alleged herein, Plaintiffs/Counterclaim-Defendants' copyright infringement was willful;

D.      A Declaration that Defendants/Counterclaim-Plaintiffs are the "prevailing parties" in this lawsuit and are entitled to recover their costs, expenses, and reasonable attorney fees;

E.      An Order, pursuant to 17 U.S.C. § 502(a), preliminarily and permanently enjoining Plaintiffs/Counterclaim-Defendants, and each of their parents, subsidiaries, divisions, branches, affiliates, predecessors or successors-in-interest, as well as any persons or entities acting or purporting to act for or on behalf of any of the foregoing, including any agents, employees, representatives, officers, directors, shareholders, servants, and partners, and those persons in active concert or participation with them, from committing any additional acts of copyright infringement;

F.      An award, pursuant to 17 U.S.C. § 504(a)(1), of actual damages, and Plaintiffs/Counterclaim-Defendants' profits, such amounts to be determined at trial;

G.      A Declaration that, by the acts alleged herein, Plaintiffs/Counterclaim-Defendants have materially breached the Agreements and the Z Living Agreement;

H.      An award of damages, in an amount to be determined at trial, directly and proximately caused by Plaintiffs/Counterclaim-Defendants' breaches of the Agreements and the Z Living Agreement;

I.      A Declaration that, by the acts alleged herein, Plaintiffs/Counterclaim-Defendants have violated the implied covenant of good faith and fair dealing;

J.      An award of damages, in an amount to be determined at trial, directly and proximately caused by Plaintiffs/Counterclaim-Defendants' violations of the implied covenant of good faith and fair dealing;

K.      An award of damages, in an amount to be determined at trial, directly and proximately caused by Asia TV's reasonable and foreseeable reliance on DISH's express promise to ███████████████████████████████████, as described herein;

L.      An award of damages, in an amount to be determined at trial, directly and proximately caused by Living Communications' reasonable and foreseeable reliance on DISH's express promise to ███████████████████████████████████, as described herein;

M.      As to Counterclaim Counts VI and VII, an Order preliminarily and permanently enjoining Plaintiffs/Counterclaim-Defendants, and each of their parents, subsidiaries, divisions, branches, affiliates, predecessors or successors-in-interest, as well as any persons or entities acting or purporting to act for or on behalf of any of the foregoing, including any agents, employees, representatives, officers, directors, shareholders, servants, and partners, and those persons in active concert or participation with them, from continuing to materially breach the Agreements and the Z Living Agreement.

N.      A Declaration that as of June 6, 2019, the parties had agreed on all material terms of a valid, binding, and enforceable agreement ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████

███████████████████████████████████████████████████████████████

████████████.

O.    A Declaration that Asia TV has not infringed any copyright rights in the Works in which Plaintiffs/Counterclaim-Defendants purport to have a copyright interest;

P.    A Declaration that Asia TV is not in material breach of the Agreements;

Q.    A Declaration that Living Communications is not in material breach of the Z Living Agreement;

R.    An award of treble damages, punitive damages, and treble profits;

S.    An award of pre- and post-judgment interest;

T.    An award of costs, expenses, and reasonable attorneys' fees; and

U.    Any further relief that this Court deems just and equitable.

Dated: December 31, 2020
       Los Angeles, California                    Respectfully submitted,

                                                  */s/ Robert M. Barta*
                                                  Robert M. Barta
                                                  Ashley L. Tate
                                                  BARTA | TATE
                                                  1801 Century Park East, Suite 1200
                                                  Los Angeles, California 90067
                                                  Tel.: (310) 479 1454
                                                  Fax: (310) 478 1439
                                                  Email: rbarta@bartatate.com
                                                  Email: atate@bartatate.com

                                                  *Attorneys for Defendants/Counterclaim-*
                                                  *Plaintiffs Asia TV USA Ltd., Asia Today*
                                                  *Ltd., and Living Communications Inc.*