UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISH NETWORK L.L.C. and SLING TV
L.L.C.,

               Plaintiffs,

               -against-

ASIA TV USA LTD., ASIA TODAY LTD.
and LIVING COMMUNICATIONS INC.,

               Defendants.

Case No. 19-cv-00021-VSB-BCM

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR AN ORDER OF ATTACHMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 3

    A.    The Parties ......................................................................... 3

    B.    The Parties' Agreements ................................................... 3

            1.    The Zee TV and Multi-Channels Agreements ........................... 4

            2.    The Z Living Agreement .......................................... 5

            3.    The Guaranty ......................................................... 5

    C.    Asia TV's and LCI's Breaches of the Agreements ................................. 6

    D.    DISH's Assignment of the Agreements to ATL ................................... 6

    E.    Procedural History .............................................................. 7

LEGAL STANDARD ....................................................................................... 8

ARGUMENT ................................................................................................ 9

I.    THE REQUIREMENTS FOR AN ATTACHMENT ORDER ARE SATISFIED .......... 9

    A.    Plaintiffs Have Stated Multiple Causes of Action Against ATL ........................... 9

    B.    Plaintiffs Have Demonstrated Probability of Success on their Claims ................ 10

            1.    Plaintiffs Will Likely Succeed on their Placement Fees Breach Claim ......................................................... 11

            2.    Plaintiffs Will Likely Succeed on their YuppTV Breach Claim ............. 11

            3.    Plaintiffs Will Likely Succeed on their Ad Avails Breach Claim .......... 13

    C.    There Is a Statutory Basis for Attachment Under CPLR Section 6201 ............... 15

    D.    The Amount Plaintiffs Seek from ATL Exceeds ATL's Counterclaims ............. 18

II.    PLAINTIFFS ARE ENTITLED TO ATTACH THE LICENSE FEES DUE TO ATL ................................................................................................. 21

III.    PLAINTIFFS SHOULD BE PERMITTED TO DEPOSIT ALL LICENSE FEES DUE AND TO BECOME DUE WITH THE COURT AND POST MINIMAL BOND ................................................................................... 22

CONCLUSION ............................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*135 Flat LLC v. Triadou SPV N.A.*,
 2016 WL 5945912 (S.D.N.Y. June 24, 2016) ....................................................................16

*ABKCO Indus, Inc. v. Apple Films, Inc.*,
 39 N.Y.2d 670 (1976) ........................................................................................................22

*Algonquin Power Corp. v. Trafalgar Power Inc.*,
 2000 WL 33963085 (N.D.N.Y. Nov. 8, 2000) ....................................................................9

*In re Amaranth Natural Gas Commodities Litig.*,
 711 F. Supp. 2d 301 (S.D.N.Y. 2010)....................................................10, 15, 16, 18, 22

*Cap. Ventures Int'l v. Republic of Argentina*,
 443 F.3d 214 (2d Cir. 2006) ...............................................................................................9

*Chevron Corp. v. Donzinger*,
 974 F. Supp. 2d 362 (S.D.N.Y. 2014)................................................................................22

*Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*,
 120 F. Supp. 2d 401 (S.D.N.Y. 2000)................................................................................10

*Doubet LLC v. Trustees of Columbia Univ. in City of N.Y.*,
 99 A.D.3d 433 (1st Dep't 2012) ........................................................................................22

*Golub Assocs. Inc. v. Lincolnshire Mgmt., Inc.*,
 1 A.D.3d 237 (1st Dep't 2003) ..........................................................................................21

*Graubard Mollen Dannett & Horowitz v. Kostantinides*,
 709 F. Supp. 428 (S.D.N.Y. 1989) ....................................................................................16

*L.F.P.I.P., Inc. v. Hustler Cincinnati, Inc.*,
 2011 WL 5024356 (S.D. Ohio Oct. 20, 2011)...................................................................23

*OSRecovery, Inc. v. One Group Int'l, Inc.*,
 305 F. Supp. 2d 340 (S.D.N.Y. 2004)................................................................................22

*Salto v. Alberto's Constr. LLC*,
 2020 WL 4383674 (S.D.N.Y. July 31, 2020) ....................................................................20

*Sony Corp. v. Universal City Studios, Inc.*,
 464 U.S. 417 (1984)............................................................................................................20

*TAGC Mgmt., LLC v. Lehman*,
   842 F. Supp. 2d 575 (S.D.N.Y. 2012)................................................................16, 18

*Terwilliger v. Terwilliger*,
   206 F.3d 240 (2d Cir. 2010)...............................................................................10

*Thornapple Assocs., Inc. v. Sahagen*,
   2007 WL 747861 (S.D.N.Y. Mar. 12, 2007) ...............................................9, 16, 18

*Xiotech Corp. v. Express Data Prods. Corp.*,
   2013 WL 4425130 (N.D.N.Y. Aug. 14, 2013) .....................................................17

*Zamora v. Morphix Co.*,
   2019 WL 4221558 (S.D.N.Y. Sept. 5, 2019)........................................................21

**Statutes**

17 U.S.C. § 106...................................................................................................20

Civil Practice Law and Rules (CPLR) § 5201 ...................................................9, 22

Civil Practice Law and Rules (CPLR) § 6201 ...........................................8, 15, 16, 18

Civil Practice Law and Rules (CPLR) § 6202 ...........................................8, 16, 21

Civil Practice Law and Rules (CPLR) § 6212 ................................................ *passim*

Fed. R. Civ. P. 64.............................................................................................1, 8

Fed. R. Civ. P. 67.............................................................................................23

**Other Authorities**

New York Secretary of State,
   https://appext20.dos.ny.gov/corp_public/CORPSEARCH.SELECT_ENTITY.....................15

Plaintiffs DISH Network L.L.C. ("DISH") and Sling TV L.L.C. ("Sling TV" and, together with DISH, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order, pursuant to Federal Rule of Civil Procedure 64 and Section 6212(a) of the New York Civil Practice Law and Rules ("CPLR"), attaching the license fees payable by DISH to Defendant Asia Today Ltd. ("ATL") under the parties' licensing agreements and permitting DISH to deposit the license fees in the Court's registry, as and when they become due under the agreements.

## PRELIMINARY STATEMENT

Plaintiffs bring this motion to secure their ability to collect on an eventual judgment in their favor in this action.  ATL is insolvent, as is Defendant Asia TV USA Ltd. ("Asia TV").  This is confirmed in the public filings of ATL's and Asia TV's parent company, Zee Entertainment Enterprises Ltd. ("Zee").  Plaintiffs have also been told that ATL will never pay the money it owes to DISH, either voluntarily or based on a judgment entered by the Court in this action.  In light of those threats, ATL's insolvency and the fact that ATL is based in Mauritius, Plaintiffs seek to attach what they understand to be ATL's primary asset in the United States: the license fees that DISH pays for rights to air the Zee television content under the parties' licensing agreements.

On October 15, 2020, DISH exercised its right, pursuant to its Guaranty with ATL, to have its agreements with Asia TV and Defendant Living Communications Inc. ("LCI") assigned to ATL, such that ATL became the counterparty to those agreements.  Instead of having license fees due to Asia TV for the Zee television content, those license fees are now due for payment to ATL. After executing the assignment, Plaintiffs also sought to exercise what they believed in good faith to be their right under the parties' agreements and New York law to set off the over $ ███████ debt owed by ATL (formerly LCI) to DISH under one of the parties' agreements against the license fees owed by DISH to ATL (formerly Asia TV) under the other two agreements.

1

Defendants responded by threatening to terminate the agreements for non-payment, and Plaintiffs moved for a preliminary injunction barring them from doing so.  On January 28, 2021, the Court denied Plaintiffs' motion, finding that Plaintiffs were not likely to succeed in showing that DISH has setoff rights *across* agreements (as opposed to under the same agreement).  In light of the Court's Order, Plaintiffs have an obligation to cure the non-payment of license fees to ATL under one agreement by February 7, 2021 and under the other agreement by February 27, 2021.  Plaintiffs seek an emergency order of attachment of these license fees, and further license fees that may become due and payable, pursuant to CPLR Section 6212(a).

An order of attachment is warranted at this time.  Plaintiffs have stated multiple breach of contract causes of action against ATL arising out of the failure to pay over $███████ in channel placement fees, the wrongful extension of the term of the YuppTV contract, and the failure to provide DISH with its full contractual allotment of advertising minutes.  Plaintiffs also have a claim to recover their attorneys' fees in this action.  Plaintiffs have demonstrated that they are "more likely than not" to succeed on the merits of those claims.  Plaintiffs satisfy the statutory requirements for attachment because ATL is a foreign entity not qualified to do business in New York.  Moreover, Plaintiffs reasonably fear they will be unable to collect on any money judgment they obtain in this action, because ATL is insolvent (as is Asia TV) and an executive with ATL's parent company has represented that any judgment for Plaintiffs against ATL will be uncollectible.  Plaintiffs' likely recovery is greater than the value of any counterclaims, because ATL asserts no counterclaims for monetary relief against Plaintiffs, and even if ATL could include Asia TV's and LCI's counterclaims in that calculation, they do not exceed Plaintiffs' claims.  Finally, this Court should allow Plaintiffs to attach the license fees because ATL's right to receive those fees is attachable property.  The Court should grant an order for attachment of the license fees.

## STATEMENT OF FACTS

### A.    The Parties

DISH delivers direct broadcast satellite ("DBS") television services to millions of households throughout the United States.  8/7/2019 Hr'g Tr. at 343:7-8.  Sling TV, a DISH subsidiary, offers over-the-top internet streaming television services ("OTT").  *Id.* at 343:10-11.

Asia TV produces and distributes foreign-language television programming, including the South Asian programming at issue in this case, which is owned by Zee, a publicly traded media conglomerate in India, and distributed outside of India by its affiliates, Asia TV and ATL.  *See* 1/28/2021 Hr'g Tr. at 62:20-63:3.  LCI is an affiliate of Asia TV and ATL and is ATL's exclusive distributor in the United States of Zee programming known as "Z Living."  *Id.* at 63:3-5; *see also* Declaration of Akhilesh Gupta (Doc. 272) ("Gupta") ¶ 2.

### B.    The Parties' Agreements

Plaintiffs have the exclusive right to air Defendants' Zee television content in the United States by satellite and OTT pursuant to three licensing agreements: an Affiliation Agreement dated March 18, 2011 between DISH and Asia TV (the "Zee TV Agreement"); an Affiliation Agreement for carriage of the Z Living channel dated March 18, 2011 between DISH and LCI (the "Z Living Agreement"); and an International Affiliation Agreement dated August 1, 2012 between DISH and Asia TV (the "Multi-Channels Agreement" and, together with the Zee TV and Z Living Agreements, the "Agreements").  Compl., Exs. 1-2; Declaration of Michael Schwimmer (Doc. 250) ("Schwimmer II"), Ex. 1; *see also* 1/28/2019 Hr'g Tr. at 63:11-23, 64:25-65:3.  Plaintiffs pay licensing fees under the Agreements for their rights to air the Zee content—at last payment, approximately $██████ per month total.  *See* Schwimmer II ¶ 16.  DISH and ATL are parties to a Guaranty dated March 18, 2011, pursuant to which ATL guaranteed Asia TV's and LCI's

obligations under the Agreements.  Compl., Ex. 3.  The relevant terms of the Agreements and the Guaranty are set forth below.

###     1.     The Zee TV and Multi-Channels Agreements

In the Zee TV and Multi-Channels Agreements, Asia TV granted Plaintiffs the exclusive right (subject to limited carveouts) to distribute thirty-four Zee channels on DISH and Sling TV through ▮▮▮▮▮▮.  *See* 8/7/2019 Hr'g Tr. at 344:4-22.  One of the limited carveouts to Plaintiffs' exclusive license relates to Asia TV's distribution of Zee programming to other providers under then-preexisting agreements, including another OTT provider, YuppTV.  *See* Declaration of Michael Schwimmer (Doc. 73) ("Schwimmer I") ¶ 11.  The Zee TV and Multi-Channels Agreements provide that Asia TV "shall not renew or extend each such agreement beyond such agreements' respective, current (*i.e.*, as of the Execution Date), expiration dates." Compl., Ex. 1 (Zee TV-DISH Term Sheet) ¶ 11; *id.*, Ex. 2 (Multi-Channels Term Sheet) ¶ 9.  Asia TV's agreement with YuppTV was required to expire by ▮▮▮▮▮; Asia TV was prohibited from renewing or extending the YuppTV agreement beyond that date.  Compl., Ex. 1 (Zee TV-DISH Term Sheet) ¶¶ 11, 25, Ex. B; *id.*, Ex. 2 (Multi-Channels Term Sheet) ¶¶ 9, 24, Ex. B.

Pursuant to the Zee TV and Multi-Channels Agreements, DISH is entitled to ▮▮▮▮▮▮ ▮▮▮▮▮▮▮; in total, Asia TV is obligated to provide DISH ▮▮ ▮▮▮▮▮▮▮.  Compl., Ex. 1 (Zee TV Agreement) § 1.6; *id.* (Zee TV-DISH Term Sheet) ¶ 16 (Asia TV ▮▮▮▮▮▮▮ DISH's advertising time on Zee TV); *id.*, Ex. 2 (Multi-Channels Agreement) at Part D; *id.* (Multi-Channels Term Sheet) ¶ 15.  This advertising time is defined as the "DISH Advertising Allocation."  *Id.*, Ex. 2 (Multi-Channels Agreement) at Part D.  The Agreements provide that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮."  *Id.*; *see id.*, Ex. 1 (Zee TV Agreement) § 1.6.



4

2.    **The Z Living Agreement**

Pursuant to Section 5(a)(III)(1) of the Z Living Agreement, the parties agreed that, in exchange for DISH's placement of Z Living on channel number 191 on DISH DBS, LCI would pay DISH a quarterly channel placement fee of $█████ with payment from LCI due "on or before the first day of <u>each</u> calendar quarter for the remainder of the Term (each a '<u>Placement Fee</u>')." Schwimmer II, Ex. 2 at 2; *see also* 1/28/2019 Hr'g Tr. at 66:7-12. Section 5(a)(III)(2) of the Z Living Agreement states that LCI's "obligation to pay the [Placement Fees] is absolute, and not contingent in any way on the commercial viability or success of the [Z Living] Service." Schwimmer II, Ex. 2 at 2. Section 5(a)(III)(5) further provides that "DISH's right to money due and to become due hereunder will not be subject to any defense (except payment), offset, counterclaim or recoupment of [LCI] whatsoever." *Id*.

3.    **The Guaranty**

Pursuant to the Guaranty, ATL unconditionally and irrevocably "guarantee[d] to DISH" the performance of Asia TV's and LCI's material obligations under the Agreements. Compl., Ex. 3 (Guaranty) § 1; *see also id*. § 2. Section 1 of the Guaranty provides that ATL "agrees and acknowledges that if at any time" Asia TV or LCI do not perform "any material term, condition, covenant, obligation [or] duty . . . under any Agreement . . ., then DISH shall" have the "right (but not the obligation) to cause the assignment and novation and transfer by [Asia TV or LCI] of all rights and obligations of [Asia TV or LCI] under such Agreement(s) (and all amendments thereto, if any) to Guarantor." *Id*. § 1. Section 1 further provides that ATL "agrees that the assignment, novation and transfer of rights and duties by [Asia TV or LCI], at DISH's option, in the preceding sentence shall be absolute." *Id*. Finally, Section 1 also states that DISH's "right to transfer and assign shall be in addition to any other rights and remedies available to DISH under the Agreements (and all amendments thereto, if any) and under any applicable law." *Id*.

### C.     Asia TV's and LCI's Breaches of the Agreements

Asia TV and LCI breached the Agreements in several ways.  *First*, Asia TV breached the Zee TV and Multi-Channels Agreements by (1) wrongfully extending its distribution agreement with YuppTV past its required expiration date set forth in the Zee TV and Multi-Channels Agreements; and (2) refusing to provide DISH with all the advertising minutes to which it is entitled under those Agreements.  *See* Second Amended Complaint (Doc. 231) ("SAC") ¶¶ 42-55; Declaration of Michael Schwimmer dated January 15, 2021 (Doc. 294) ("Schwimmer III") ¶¶ 8-11, Ex. B; Declaration of Bradford Hammer (Doc. 147) ("Hammer") ¶¶ 6-17; Declaration of Jon Hageali (Doc. 292) ("Hageali") ¶¶ 2-7; *see also* Doc. 248 at 6-7; Doc. 290 at 5-8.  *Second*, LCI breached the Z Living Agreement by refusing to pay DISH any Placement Fees for the Z Living channel since Q4 2018.  *See* SAC ¶¶ 60-65; Schwimmer II ¶¶ 8-11; Doc. 248 at 7-8, 17; Doc. 290 at 3-5.[1]  Pursuant to the Guaranty, ATL is liable for these breaches as Asia TV's and LCI's guarantor.  Compl., Ex. 3 § 1.  ATL is also liable for these breaches because, as a result of those breaches, DISH has exercised its right under the Guaranty to assign Asia TV's and LCI's rights under the Agreements to ATL (discussed below).  *See infra* at 6-7.  Plaintiffs have asserted claims against ATL for these material contract breaches.  SAC ¶¶ 77-81, 90-94.

### D.     DISH's Assignment of the Agreements to ATL

On or about July 22, 2020, Michael Schwimmer, Executive Vice President and Group President of Sling TV, had a telephone conversation with Mukund Cairae, the Chief Operating Officer ("COO") of Zee's International Business.  *See* Schwimmer II ¶ 11; Decl. of Mukund Cairae (Doc. 264) ("Cairae") ¶ 4.  On that call, Mr. Cairae represented to Mr. Schwimmer that LCI would

---

[1] Because Asia TV's and LCI's breaches of the Agreements have already been extensively addressed in previously-filed declarations and motions, Plaintiffs have cited the docket numbers of those motions and declarations here and have not re-filed them, so as not to burden the Court with duplicate filings.

not be paying DISH the Placement Fees it is owed, nor would its guarantor, ATL.  *See* Schwimmer II ¶ 11.  Mr. Cairae further stated that DISH would be frustrated in any attempts to collect on a judgment against LCI or ATL for the Placement Fees in this action.  *Id*.  Mr. Cairae does not dispute that he made these statements to Mr. Schwimmer.  Cairae ¶¶ 3-4.

On October 15, 2020, DISH exercised its "absolute" right under the Guaranty to cause the assignment and transfer of all Asia TV's and LCI's rights and obligations under the Agreements to ATL, due to Asia TV's and LCI's material breaches of the Agreements.  *See* Schwimmer II, Ex. 4 at 1-2.  As a result of the Assignment, ATL is now the counterparty under each of the Agreements and, therefore, license fees due under the Agreements are payable to ATL, not Asia TV or LCI. In its October 15, 2020 notice, Plaintiffs also asserted that DISH had the right to set off the past due Placement Fees owed to DISH against the license fees that Plaintiffs owed to ATL under the Zee TV and Multi-Channels Agreements.  *Id*. at 2-3.  Defendants retaliated by threatening to imminently terminate the Agreements for non-payment.  *Id.*, Ex. 5 at 2.

### E.   **Procedural History**

On November 20, 2020, Plaintiffs filed their third motion for preliminary injunction, requesting an order from the Court barring Defendants from terminating the Agreements during the pendency of this action on the basis of non-payment of license fees as to which DISH had exercised its claimed setoff rights.  *See* Doc. 248.  DISH believed in good faith that, as a result of its assignment of the Agreements to ATL, DISH had the right—both under the Agreements and New York law—to set off the unpaid Placement Fees owed by ATL (formerly LCI) against, and in full satisfaction of, the license fees DISH owed to ATL (formerly Asia TV).

The Court heard oral argument on January 28, 2021 and denied Plaintiffs' motion.  The Court found that, although "defendants likely breached by failing to pay the [P]lacement [F]ees" (1/28/2021 Hr'g Tr. at 71:7-8) and that the "analysis would be similar" on Plaintiffs' YuppTV

breach claim (*id*. at 75:14-15), Plaintiffs had not demonstrated a likelihood of success that DISH had the right to set off amounts due to DISH under the Z Living Agreement against amounts owed by DISH under the Zee TV and Multi-Channels Agreements.  *Id*. at 76:8-18; *see also id*. at 77:13-16 ("[T]here is no provision in the agreement or in any of their many amendments that allows the parties to setoff debts owed under one agreement against debts owed under another agreement."). The Court also found that Plaintiffs had not demonstrated irreparable harm because: (i) the parties' Agreements are ████████████████████████████████████████████████ ████████████████████████████████" (*id*. at 83:3-4); and (ii) although Mr. Cairae undisputedly stated that ATL would never pay DISH the Placement Fees it is owed (even if ordered to do so by this Court), he had also submitted a declaration stating that ATL is profitable (*id*. at 83:18-24).

## LEGAL STANDARD

Federal Rule of Civil Procedure 64(a) authorizes "every remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," including attachment.  Under New York law, the Court has the power to enter an order of attachment against a defendant's property upon a showing "[1] that there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in [CPLR] section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  CPLR § 6212(a).

Attachment of a defendant's property, including "a present or future right or interest," is appropriate where it is necessary to secure payment of a possible judgment.  CPLR § 6202 ("Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment."); CPLR § 5201(b) ("A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or

interest and whether or not it is vested."); *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006) (attachment may be granted where "needed to secure payment").

## ARGUMENT

## I.   THE REQUIREMENTS FOR AN ATTACHMENT ORDER ARE SATISFIED

### A.   Plaintiffs Have Stated Multiple Causes of Action Against ATL

The first element required for attachment is that "there is a cause of action" against the defendant against whom attachment is sought.   CPLR § 6212(a).   "The standard for determining whether a cause of action exists for purposes of attachment under New York law is a liberal one. Unless the plaintiff's papers clearly establish that the plaintiff must ultimately be defeated, a cause of action exists." *Thornapple Assocs., Inc. v. Sahagen*, 2007 WL 747861, at *3 (S.D.N.Y. Mar. 12, 2007).   In other words, if the facts alleged by the plaintiff, taken as true, state a claim for relief, there is a cause of action for purposes of attachment.   *See Algonquin Power Corp. v. Trafalgar Power Inc.*, 2000 WL 33963085, at *7 (N.D.N.Y. Nov. 8, 2000) ("[I]f the circumstances as plaintiff presents them were found to be true, then plaintiff has at the very least stated a cognizable claim" for purposes of attachment).   Plaintiffs plainly meet this test.

Plaintiffs have stated at least three causes of action against ATL for breach of the Agreements.   *First*, Plaintiffs allege that, although they have performed their obligations under the Zee TV and Multi-Channels Agreements, Asia TV breached those Agreements by extending the term of the YuppTV Agreement past its required expiration date, without DISH's consent.   SAC ¶¶ 42-51, 77-80.   *Second*, Plaintiffs allege that Asia TV breached the Zee TV and Multi-Channels Agreements by refusing to provide DISH with all the advertising minutes allocated to DISH under those Agreements.   *Id*. ¶¶ 52-55, 81.   *Third*, Plaintiffs allege that, although they have performed their obligations under the Z Living Agreement, LCI breached that Agreement by failing to pay DISH any Placement Fees since Q4 2018.   *Id*. ¶¶ 60-65.   Plaintiffs allege that these breaches caused

them to suffer damages. *Id*. ¶¶ 77-81, 90-94. These allegations state causes of action for breach of contract under New York law. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2010).

ATL is liable for Asia TV's and LCI's breaches on two separate and independent grounds: (1) ATL is liable for the breaches as Asia TV's and LCI's guarantor (SAC ¶¶ 77-81, 90-94); and (2) ATL is liable for the breaches because, as a result of DISH's October 15, 2020 assignment, ATL is DISH's contractual counterparty under the Agreements.[2]

### B.   Plaintiffs Have Demonstrated Probability of Success on their Claims

The second element for attachment is "probability of success on the merits." CPLR § 6212(a). "Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." *In re Amaranth Natural Gas Commodities Litig.*, 711 F. Supp. 2d 301, 306 (S.D.N.Y. 2010). However, in making this determination, all "inferences should be drawn in favor of the party seeking the attachment." *Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*, 120 F. Supp. 2d 401, 406 (S.D.N.Y. 2000). Through substantial motion practice in this case, including three motions for preliminary injunction, Plaintiffs have submitted considerable supporting affidavits and documentary evidence demonstrating that they are "more likely than not" to succeed on their breach claims against ATL.

---

[2] Each of the three Agreements was entered into between DISH and Asia TV. That mutuality of parties among the three Agreements ended in 2016 when ATL exercised rights under the Guaranty to appoint LCI as its new exclusive distributor of the Z Living service. DISH restored that mutuality in 2020 by exercising its "absolute" right under the Guaranty to assign all rights and obligations of Asia TV and LCI under each of the three Agreements to ATL. While, on DISH's third preliminary injunction motion, the Court expressed skepticism that DISH's exercise of its Guaranty rights restored mutuality of the puts and takes among the three Agreements, DISH's unilateral exercise of its "absolute" mutuality-restoring rights under the Guaranty in 2020 is just as valid as ATL's unilateral exercise of its mutuality-destroying rights under the Guaranty in 2016.

1.     __Plaintiffs Will Likely Succeed on their Placement Fees Breach Claim__

Plaintiffs are "more likely than not" to prevail on their Placement Fees breach claim.  It

Defendants do not dispute that LCI has failed to pay Placement Fees since Q4 2018, nor do they

dispute that LCI's failure to pay the Placement Fee Balance, if unexcused, is a material breach of

the Z Living Agreement.  Defendants claim that LCI's non-payment was not a breach because

DISH allegedly agreed to waive all Placement Fees in a settlement negotiation email that Mr.

Gupta (of Asia TV) sent to Mr. Hammer (of DISH) on June 6, 2019.  *See* 1/28/2019 Hr'g Tr. at

71:9-13.  The parties submitted the relevant email correspondence to the Court in connection with

Plaintiffs' third preliminary injunction motion.  The Court held in its January 28, 2021 Order that

the "June 6th, 2019 email exchange did not create a binding agreement; therefore, LCI is likely in

breach of the [Z] Living Agreement for failure to pay the [P]lacement [F]ees."  *Id*. at 75:6-9.

2.     __Plaintiffs Will Likely Succeed on their YuppTV Breach Claim__

Plaintiffs are "more likely than not" to prevail on their YuppTV breach claim.  It is

undisputed that the Zee TV and Multi-Channels Agreements, by their terms, required Asia TV to

allow the YuppTV Agreement to expire without renewal by ███████.  *See* Compl., Ex. 1

(Zee TV-DISH Term Sheet) ¶ 25, Ex. B; *id.*, Ex. 2 (Zee TV-DISH Multi-Channels Term Sheet) ¶

25, Ex. B.  It is also undisputed that Asia TV extended the YuppTV Agreement for ████████

███, beyond the required expiration date.  SAC ¶ 43; Defendants' First Amended Counterclaims

(Doc. 281) ("Counterclaims") ¶ 119.  Defendants claim the extension was not a breach because

DISH allegedly agreed to it in settlement negotiation emails between Brad Hammer of DISH and

Akhilesh Gupta of Asia TV, including in the June 6, 2019 email that the Court has already found

"did not create a binding agreement."  *Id*. ¶¶ 118-130.  Although the Court did not find it necessary

to address Plaintiffs' YuppTV breach claim in its January 28, 2021 Order, the Court "note[d] that

the Yupp TV analysis would be similar to [its] earlier stated analysis" (1/28/2021 Hr'g Tr. at 75:13-

11

15) that "the June 6th, 2019 email exchange did not create a binding agreement" (*id*. at 75:6-7). Instead, the Court explained, "the June 6th, 2019, email correspondence, read in full, appears to be two parties carrying on ongoing negotiations[,] not entering into a binding contract."  *Id*. at 73:7-9.  Defendants' other theories of when this alleged "agreement" was reached likewise fail.

*First*, Defendants have claimed that Mr. Hammer agreed to the ███ extension in an email to Mr. Gupta on March 19, 2019.  *See* Counterclaims ¶ 122.  In connection with Plaintiffs' second preliminary injunction motion, Mr. Hammer submitted a declaration, including the March 19, 2019 email in question, which shows that no such agreement was ever reached.  Hammer, Ex. 6.  Instead, the non-controvertible record shows that Mr. Gupta sent Mr. Hammer an email on March 19, 2019 as part of the parties' continued negotiations toward an overall, comprehensive settlement.  Hammer ¶ 13.  In that email, Mr. Gupta expressed agreement to Mr. Hammer's prior statement, as point number "7" under negotiation in his email of March 15, 2019, that if the parties could reach agreement on all the "above terms" under discussion, DISH could consent to a ███ ███ extension.  *Id*.  The parties never reached agreement on a settlement.  *Id*. ¶ 17.

*Second*, Defendants point to Mr. Gupta's May 16, 2019 email to Mr. Hammer, in which Mr. Gupta unilaterally declared that the ███ YuppTV extension was an "agreed deal term[]" between the parties.  Counterclaims ¶ 123.  Defendants omit that Mr. Gupta expressly stated that, in his view, the parties were "close" but there were a number of additional terms, which he listed in this email, that needed to be "resolved" before the parties could have an agreement on settlement.  Hammer, Ex. 5 (email on May 16, 2019 at 5:05 p.m.).  No agreement was reached. Moreover, Defendants fail to mention that Asia TV allowed the YuppTV Agreement to automatically renew for ███ on April 10, 2019, over a month *before* Defendants even claim DISH agreed to the extension.  *See* Declaration of Elyse D. Echtman dated January 29, 2021

("Echtman III"), Ex. 1 (YuppTV Agreement) § 2 (providing for automatic ███ renewal effective May 10, 2019 unless Asia TV provides YuppTV written notice of non-renewal by April 10, 2019). Thus, even under Defendants' theory of events, at the time Asia TV extended the YuppTV Agreement for ███████, DISH had not agreed to that (or any other) extension.

*Third*, Defendants claim that Mr. Hammer agreed to the ██████ extension in a May 30, 2019 email to Mr. Gupta. Counterclaims ¶ 124. That, too, is false. In his May 30, 2019 email to Mr. Gupta, Mr. Hammer offered to extend the YuppTV termination deadline by ███████, not ██████, "[i]n the spirit of ongoing talks." Hammer, Ex. 1. A possible ██████ extension was only being discussed in the context of an overall, comprehensive settlement being reached. Hammer ¶¶ 12-13. Settlement discussions reached an impasse in early July 2019 (*id*. ¶ 10) and, on July 3, 2019, Mr. Hammer asked Mr. Gupta to confirm Asia TV had ceased delivery of its programming to YuppTV (*id.*, Ex. 3). Mr. Gupta responded on July 8, 2019, informing DISH that Asia TV had not ceased delivery and, in fact, had extended YuppTV for ███████. *Id.*, Ex. 4.

Moreover, after DISH filed its second preliminary injunction motion, Asia TV and YuppTV terminated the YuppTV Agreement and removed Asia TV's content from YuppTV on November 30, 2019. That is a tacit concession of breach. ATL, as Asia TV's guarantor, is liable to Plaintiffs for this breach. SAC ¶¶ 77-80. ATL is also separately and independently liable for this breach because, by operation of the assignment, it is DISH's counterparty to the Agreements.

### 3.   Plaintiffs Will Likely Succeed on their Ad Avails Breach Claim

Plaintiffs are "more likely than not" to prevail on their ad avails breach claim. Under the Zee TV and Multi-Channels Agreements, DISH is entitled to ████████████████. *See supra* at Section I.B.2. DISH has been provided with less than its allocated and requested ████████████████. Hageali I ¶ 2-3. DISH invoked its right to the full amount of its ad avails on

these channels from March 10, 2020 onward, but Asia TV has not provided DISH all those minutes. *Id*. ¶¶ 4-7. For Zee Bangla, Asia TV failed to provide DISH the requested █████████ at least from March-July 2020 and from October-December 2020. *Id*. ¶ 4. For Zee Marathi, Asia TV failed to provide DISH the requested ███████ at least from March-July 2020. *Id*. ¶ 5. For Zee News, Asia TV failed to provide DISH the requested ████████ at least from March-July 2020 and in November 2020. *Id*. ¶ 6. Finally, for Zee TV HD, Asia TV failed to provide DISH the requested ███████ at least from March-December 2020. *Id*. ¶¶ 5-7. Asia TV has wrongfully withheld over ████████ of advertising time from DISH. *Id*. ¶¶ 4-7.

In opposition to Plaintiffs' third preliminary injunction motion, Defendants proffered a declaration from Asia TV's Assistant Vice President of Ad Operations, Leena Pawar, which all but concedes Asia TV's breaches. Decl. of Leena Pawar (Doc. 325) ("Pawar"). The data included in Ms. Pawar's declaration confirms that Asia TV provided DISH with less than ███████████ of ad avails in the relevant time period. *Compare* Pawar ¶ 5 *with* Hageali ¶¶ 4-7. Below is the chart of total minutes by month that Asia TV claims it provided on each channel, as set forth in Ms. Pawar's declaration. *See* Pawar ¶ 5. In each month highlighted in yellow, Asia TV necessarily failed to provide the required ███████ even according to Ms. Pawar's own declaration:



ATL, as Asia TV's guarantor, is liable to DISH for these breaches. SAC ¶ 78-81. ATL is also separately and independently liable for these breaches because, by operation of the assignment, it is DISH's counterparty to the Agreements.

**C.**     **There Is a Statutory Basis for Attachment Under CPLR Section 6201**

The third element for attachment—"that one or more grounds for attachment provided in [CPLR] section 6201 exist" (CPLR § 6212(a))—is satisfied here.  CPLR Section 6201(1) provides that "[a]n order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled, in whole or in part . . . to a money judgment" and the defendant "is a foreign corporation not qualified to do business in the state."  It is undisputed that ATL is a "foreign corporation" organized under the laws of Mauritius, with its principal place of business in Mauritius.  Counterclaims ¶ 3.  ATL is not qualified to do business in New York, as confirmed by the lack of any records on file for ATL with the New York Secretary of State:[3]

**NYS Department of State**
**Division of Corporations**
**Informational Message**
The information contained in this database is current through January 21, 2021.

**No business entities were found for Asia Today .**

**Please refine your search criteria.**

**To continue please do the following:**

**Tab to Ok and press the Enter key or Click Ok.**

Ok

Therefore, the test for attachment in CPLR Section 6201(1) is satisfied as to ATL.  *See In re Amaranth*, 711 F. Supp. 2d at 312 (CPLR § 6201(1) test satisfied where defendant was a Cayman Islands company and "a search of the New York State Department of State, Division of Corporations database reveals no entries for [defendant]").

Plaintiffs acknowledge that, because ATL has consented to this Court's jurisdiction, including in Section 10 of the Guaranty (Compl., Ex. 3 § 10), an additional showing is required for attachment here:  it must also "appear[] likely that [Plaintiffs] will have difficulty enforcing a

---

[3] https://appext20.dos.ny.gov/corp_public/CORPSEARCH.SELECT_ENTITY.

judgment" against ATL.  *CF 135 Flat LLC v. Triadou SPV N.A.*, 2016 WL 5945912, at *9 (S.D.N.Y. June 24, 2016).  "In evaluating [that] question, the Court 'must determine [1] whether [ATL] has assets within the State that could satisfy a judgment and [2] whether [Plaintiffs'] fear that the judgment will not be satisfied is reasonable.'"  *Id*.  Both these elements are satisfied here.

*First*, there is no evidence that ATL, which is incorporated and based in Mauritius, has any assets in New York.  *See TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 587 (S.D.N.Y. 2012) (granting attachment against foreign corporation defendants that consented to jurisdiction because, *inter alia*, "defendants have not furnished any evidence of assets they own in New York that would satisfy a judgment"); *Thornapple*, 2007 WL 747861, at *6 (granting attachment against foreign corporation where, *inter alia*, defendant "has no assets within New York that could satisfy a judgment in Thornapple's favor").  Even if ATL had bank accounts in New York, attachment would still be warranted under Section 6202(1) because funds in bank accounts are "extremely liquid, and easily transferable out of New York."  *Thornapple*, 2007 WL 747861, at *6; *see also Graubard Mollen Dannett & Horowitz v. Kostantinides*, 709 F. Supp. 428, 432 (S.D.N.Y. 1989) (granting attachment of funds in bank account under § 6201(1) because "[t]hese accounts, by nature, are liquid and can be easily transferred from the jurisdiction by a simple telephone call").

*Second*, Plaintiffs' "fear that the judgment will not be satisfied" is reasonable because ATL's "financial position or past and present conduct, poses a real risk of the enforcement of a future judgment."  *In re Amaranth*, 711 F. Supp. 2d at 306.  According to Zee's 2019-2020 Annual Report, ATL is insolvent (its total liabilities exceed its total assets):

| Name of the subsidiary | Date of Acquisition | Reporting Currency | Share Capital | Reserves & Surplus | Total Assets | Total Liabilities |
|---|---|---|---|---|---|---|
| Asia Today Limited (Formerly known as Zee Multimedia (Maurice) Limited) ^ | 19-Jan-06 | USD | 7 | (996) | 11,330 | 12,319 |

Echtman III, Ex. 2 (Zee 2019-2020 Annual Report) at 64.  It is also undisputed that Mr. Cairae,

COO of Zee's International Business, recently told Mr. Schwimmer that ATL and LCI will never

pay DISH the Placement Fees it is owed and that if DISH obtains a judgment for the Placement

Fees in this case, DISH will be frustrated in its attempts to collect on that judgment from ATL or

LCI.  *See* Schwimmer II ¶ 11; *see also* Cairae ¶¶ 3-4.  In denying Plaintiffs' third motion for

preliminary injunction, the Court found that Plaintiffs had not shown irreparable harm based on

Mr. Cairae's threats that a judgment would be uncollectible because Mr. Cairae had submitted a

declaration stating that "ATL is a profitable company."  1/28/2021 Hr'g Tr. at 83:18-22.[4]  Mr.

Cairae's statement, made under penalty of perjury, was false according to Zee's 2019-2020 Annual

Report, which publicly disclosed that ATL is *not* profitable but is operating at a significant loss:

| | Profit / (loss) before taxation | Provision for taxation | Profit / (loss) after taxation |
|---|---|---|---|
| Asia Today Limited (Formerly known as Zee Multimedia (Maurice) Limited) ^ | (1,294) | (5) | (1,289) |

Echtman III, Ex. 2 at 64.  The Zee financial statements similarly show that Asia TV is insolvent

and operating at a loss.  *Id.*

Based on the fact that ATL is insolvent according to Zee's public filings and Mr. Cairae's

undisputed representations that ATL will never pay DISH a dime of the Placement Fees it is owed

---

[4] Mr. Cairae did not support this conclusory statement with any evidence demonstrating ATL's alleged "profitability," nor have Defendants.  In fact, Defendants have refused to answer any of Plaintiffs' discovery requests for information regarding ATL's assets.  *See* Declaration of Elyse D. Echtman (Doc. 296), Ex. 2. Where, as here, there is evidence in the record calling the defendant's ability to pay a judgment into doubt, the defendant cannot claim that a judgment would be collectible based on its bald assertion that it is profitable or has "receivables due."  *Xiotech Corp. v. Express Data Prods. Corp.*, 2013 WL 4425130, at *4 (N.D.N.Y. Aug. 14, 2013) (defendants' bald assertion that they had "receivables due," with "no affidavits or proof to support that conclusory assertion," was insufficient to establish that "defendants will be able to pay any future award or that plaintiff will be able to collect on a judgment").

(even if ordered to in a judgment by this Court), Plaintiffs reasonably fear that a judgment in their favor for the Placement Fees will be uncollectible.  Schwimmer II ¶ 13; *see also Amaranth*, 711 F. Supp. 2d at 312 (granting attachment under § 6201(1) where defendant's "financial position . . . poses a significant risk that plaintiffs will not be able to enforce a future judgment against it"); *Thornapple*, 2007 WL 747861 at *6 (granting attachment under § 6201(1) because defendant was in "financial distress" and "a defendant's financial instability may justify a plaintiff's fear that a potential judgment will not be satisfied and thus provide a ground for an attachment"); *TAGC Mgmt.*, 842 F. Supp. 2d at 587 (granting attachment where plaintiffs escrowed $1 million with defendant, which stated it would not "cooperate" with plaintiffs' requests for return of funds).

### D.    The Amount Plaintiffs Seek from ATL Exceeds ATL's Counterclaims

The final element for attachment is that "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  CPLR § 6212(a).  This element is satisfied here.    As of the date of this motion, Plaintiffs seek the following amounts on their claims against ATL:

- Over $██████ in past due Placement Fees, plus interest as provided for in Section 5(a)(III)(3) of the Z Living Agreement (Doc. 290 at 8 n.3);

- Damages for the wrongfully withheld advertising time on ███████████████ ███████████████████ which has an approximate value of at least ██████ (Hageali I ¶ 4-7; *see also* Decl. of Jon Hageali dated January 29, 2021, Ex. A);

- Damages to be proven at trial on the YuppTV breach claim (SAC at 27); and

- Over $1.56 million in attorneys' fees and costs that Plaintiffs have incurred in this action (Echtman III ¶ 4), which are recoverable pursuant to the fee-shifting provision in the Zee TV Agreement (SAC ¶¶ 95-98).

Thus, the total amount Plaintiffs demand from ATL in this case will exceed $██████.

By contrast, ATL has not asserted any counterclaims against Plaintiffs for money damages. Indeed, the only counterclaim asserted by ATL is for declaratory judgment that it is not in breach of its contractual obligations to DISH by refusing to pay DISH the Placement Fees owed under the Z Living Agreement.   Counterclaims ¶¶ 286-89.   Even if ATL were entitled to have Asia TV's and LCI's counterclaims included as its own for purposes of this "counterclaim value" analysis (it is not), Plaintiffs' likely recovery of at least $ ███████ from ATL (which will only increase as this litigation continues) still exceeds the value of all counterclaims.  *First*, Asia TV and LCI have not valued any of their counterclaims for money damages.   *Second*, their money damages counterclaims are meritless and therefore are worth $0 (or at least far less than Plaintiffs' claims):

**Counts I and V (copyright infringement and breach of contract for out-of-home viewing)**.  The Court has found that "the 'home-use' requirement that defendants have attempted to read into the parties' agreements strains both the terms of the contracts and common sense." 8/7/2019 Hr'g Tr. at 361:18-20.

**Counts II, VI and VII (copyright infringement and breach of contract for ███████ ███████████████ viewing)**.  Plaintiffs do not distribute the Zee content █████████████████████. Asia TV claims that, to the extent that DISH satellite subscribers on vacation ███████████████████ ███████ might use place-shifting technology built into their home set-top-boxes in the United States to remotely access Zee content available to them on those set-top-boxes, DISH purportedly infringes its copyrights.  That claim is not only factually speculative, it also lacks legal merit.  The Multi-Channels Agreement explicitly allows subscribers to use place-shifting technology.  *See* Compl., Ex. 2 (Multi-Channels Agreement) § 4.2.4 "Consumer Technology" ("Nothing contained in this Agreement may be deemed to prohibit DISH or its Affiliates from making available any Service Subscriber-initiated . . . place-shifting technology . . . in connection with the Service. . .

19

."").  In addition, from a copyright perspective, the seminal United States Supreme Court decision in *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) controls, and holds that this type of consumer viewing—using consumer technology in the home—is a fair use.  *See also* 17 U.S.C. § 106.  Moreover, when a DISH customer accesses television content using the DISH Anywhere remote viewing features contained inside a home Hopper DVR, the customer is the one doing the "performing" of the work being viewed.  And, it is not a public performance.  The subscriber sends a single discrete programming signal to herself.

**Counts III and IV (Zee Cinemalu packaging and Subscriber Reports)**.  Plaintiffs dispute that there was any breach, but even if these claims had merit, Asia TV would be entitled to only nominal damages because the Court has found these were immaterial breaches.  8/7/2019 Hr'g Tr. at 349:21-350:12; *see also Salto v. Alberto's Constr. LLC*, 2020 WL 4383674, at *4 n.4 (S.D.N.Y. July 31, 2020) (plaintiff entitled to "nominal damages only" for immaterial breach).

**Counts X-XII (delayed launch of Zee Familia and non-launch of ▮▮▮▮▮ and ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ )**.  Plaintiffs are not responsible for the delayed launch of Zee Familia, and Plaintiffs were not obligated to launch ▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮ , as DISH's obligation to launch was expressly conditioned on timely notice from Asia TV by the deadline in the parties' Agreements, and Asia TV failed to provide such timely notice.

**Counts XIII and XIV (failure to pay license fees)**.  These claims are moot, as they are based on Plaintiffs' withholding of license fees pursuant to its setoff rights, which the Court determined Plaintiffs did not have.  Plaintiffs will be making payment of the fees owed—though into the Court's registry if this motion is successful.

**Counts XVI and XVIII (Promissory Estoppel – YuppTV and Placement Fees)**.  There is no basis for these claims, as they are based on email correspondence that the Court has found

likely did not form a binding agreement to waive the Placement Fees (or extend YuppTV), but rather was just "two parties carrying on ongoing negotiations." 1/28/2021 Hr'g Tr. at 73:7-9.

**Counts XIX and XX (Good Faith and Fair Dealing on Placement Fees)**.  This claim alleges that DISH breached the covenant of good faith and fair dealing by not moving Z Living off channel 191 to help LCI avoid Placement Fees and purportedly "reneging" on the parties' agreement in the June 6, 2019 email.  This claim fails because (i) the Court has found that there most likely was no agreement reached in the June 6, 2019 email, and (ii) DISH has an "absolute" right to the Placement Fees under the Z Living Agreement.  *See Golub Assocs. Inc. v. Lincolnshire Mgmt., Inc.*, 1 A.D.3d 237, 238 (1st Dep't 2003) ("Defendants were entitled to enforce the terms of the agreement; the implied covenant of good faith and fair dealing may not be construed to nullify existing contractual provisions or contrive novel contract rights.").

**Count XXI (Attorneys' Fees)**.  "Under New York law, where a contract awards attorneys' fees to the 'prevailing party,' 'a fundamental consideration is whether that party has 'prevailed with respect to the central relief sought.'"  *Zamora v. Morphix Co.*, 2019 WL 4221558, at *4 (S.D.N.Y. Sept. 5, 2019).  It is Plaintiffs, not Defendants, who are most likely to prevail on the "central relief sought," which is a finding that the Agreements do not prohibit subscribers from viewing Sling TV outside the home.  Defendants' attorneys' fees, in any event, will not exceed Plaintiffs' total damages claims against ATL.

## II.   <u>PLAINTIFFS ARE ENTITLED TO ATTACH THE LICENSE FEES DUE TO ATL</u>

Where, as here, the elements for attachment under New York law have been satisfied, CPLR Section 6202 permits attachment of "any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested," subject to exemptions for certain types of property not applicable here (CPLR § 5201(b)).

Under New York Court of Appeals precedent, the license fees due to ATL under the Agreements are attachable "property" within the meaning of CPLR Section 5201(b). *ABKCO Indus, Inc. v. Apple Films, Inc.*, 39 N.Y.2d 670, 675 (1976) (foreign corporation's "interest in the Licensing Agreement"—the right to receive royalties—was attachable "property" under § 5201(b)); *see also Doubet LLC v. Trustees of Columbia Univ. in City of N.Y.*, 99 A.D.3d 433, 434 (1st Dep't 2012) (holding that "right to payment under a binding, assignable written contract with respondent was 'property'" subject to attachment under CPLR § 5201(b)); *Chevron Corp. v. Donzinger*, 974 F. Supp. 2d 362, 640 n.1820 (S.D.N.Y. 2014) (right to monthly payments under contract is attachable "property subject to execution and attachment under [CPLR § 5201(b)]").

## III.   PLAINTIFFS SHOULD BE PERMITTED TO DEPOSIT ALL LICENSE FEES DUE AND TO BECOME DUE WITH THE COURT AND POST MINIMAL BOND

CPLR Section 6212(b) requires the party seeking attachment to post an undertaking in an amount to be determined by the Court, but not less than $500. Courts have found bonds between .04% and .35% of the amount being attached sufficient. *See, e.g.*, *OSRecovery, Inc. v. One Group Int'l, Inc.*, 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004) ($100,000 bond sufficient under § 6212(b) where attachment sought assets totaling $250 million, which was .04% of the assets sought to be attached); *In re Amaranth*, 711 F. Supp. 2d at 313 ($250,000 bond sufficient under § 6212(b) to secure attachment in amount of $72.4 million, which was .35% of the assets).

Here, Plaintiffs should only be required to post the minimum $500 bond under CPLR Section 6212(b) and should be permitted to deposit all license fees due to ATL with the Court's registry, pursuant to Federal Rule of Civil Procedure 67. *See* Fed. R. Civ. P. 67(a) ("If any part of the relief sought is a money judgment or the disposition of a sum of money . . . a party . . . may deposit with the court all or part of the money or thing."); *L.F.P.I.P., Inc. v. Hustler Cincinnati, Inc.*, 2011 WL 5024356, at *1 (S.D. Ohio Oct. 20, 2011) ("The parties agreed at the suggestion of

the Court that [defendant] would continue to pay substantial license fees into escrow for use of the [plaintiff's] trademarks while the litigation was pending.").

## **CONCLUSION**

For the reasons set forth herein, Plaintiffs' motion for attachment should be granted and Plaintiffs should be permitted to deposit with the Court all license fees due to ATL.

Dated:  January 29, 2021                ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  */s/ Elyse D. Echtman*
Elyse D. Echtman
Gregory D. Beaman
51 West 52nd Street
New York, NY 10019
Telephone:   (212) 506-5000
Facsimile:    (212) 506-5151
Emails:   eechtman@orrick.com
               gbeaman@orrick.com

*Attorneys for Plaintiffs DISH Network L.L.C.*
*and Sling TV L.L.C.*