```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DISH NETWORK LLC AND SLING TV
LLC,

             Plaintiffs,

       v.                                  19 Civ. 21 (VSB)

ASIA TV USA LTD., ET AL.,
                                           Remote Conference

             Defendants.

------------------------------x
                                           New York, N.Y.
                                           October 14, 2021
                                           11:00 a.m.

Before:

             HON. VERNON S. BRODERICK,

                                           District Judge

                        APPEARANCES

ORRICK HERRINGTON & SUTCLIFFE LLP
     Attorneys for Plaintiffs
BY:  ELYSE D. ECHTMAN
     Gregory Douglas Beaman

BARTA TATE
     Attorneys for Defendants
BY:  ROBERT M. BARTA
     TYLER JAMES FRANKLIN
```

1           (The Court and all parties present remotely)

2           THE COURT:  If we could go on the record.

3           This matter is on for a status conference.  I first
4  ask for plaintiffs' counsel to please identify yourself for the
5  record by name, and please -- and then defense counsel.  And
6  please remember, when you do speak, I'd ask that you identify
7  yourself by name, and that when you're not speaking, please try
8  and mute your phone so that we can limit the amount of
9  background noise.

10          For the plaintiff.

11          MS. ECHTMAN:  Good morning, your Honor.  This is Elyse
12 Echtman, and the last name is spelled E-c-h-t-m-a-n, of Orrick
13 Harrington & Sutcliffe, for plaintiff Dish Network and Sling
14 TV.  I also have with me this morning my partner Greg Beaman,
15 and the last name is B-e-a-m-a-n.

16          THE COURT: OK.  Thank you.

17          And for the defense.

18          MR. BARTA:  Good morning, your Honor.  This is Robert
19 Barta of Barta Tate.  I have with me my associate Tyler
20 Franklin, F-r-a-n-k-l-i-n.

21          THE COURT: OK.  Thank you.

22          When we were last -- when we had our last conference,
23 I know the parties were engaging in discussions with regard to
24 the various fees that are allegedly owed by the parties to one
25 another and discussing the possibility of placing those fees

1   into an escrow account.  I understand that -- and I'll say
2   separately, but that there had been some other ongoing
3   discussions about perhaps a resolution of the case in general.
4   But I checked the docket earlier.  I didn't see any update.
5          So let me hear, I guess, from plaintiffs' counsel,
6   from your perspective where things currently stand.
7          MS. ECHTMAN:  Yes, your Honor.  This is Elyse Echtman.
8          So the parties, in response to your September 22 order
9   that suggested that we might agree to put the disputed
10  placement fee funds and the disputed license fee funds in
11  escrow as a resolution for the attachment motion, we had
12  conferred, and the parties agreed that an escrow made sense.
13  But we also thought it would make sense to explore whether we
14  could do a partial settlement that would settle the license fee
15  claims and the placement fee claims, and we had further
16  discussions along those lines.
17         The first order of business was to reconcile the
18  amounts that are at issue, and it took a little bit of time to
19  do that, but we were able to reach agreement as to the amounts
20  at issue on each of those claims.  We also explored whether we
21  could do a partial settlement, and those discussions have
22  broken down, and we have not been able to agree upon a partial
23  settlement.  And from my clients' side, it's not interested in
24  continuing those conversations.
25         So at this point, Dish and Sling TV would like to move

1  forward with the escrow.  And, specifically, we think it makes

2  the most sense for the parties to deposit the money with the

3  court pursuant to Federal Rule of Civil Procedure 67(a).  That

4  way we can avoid escrow fees, we can avoid having to agree upon

5  an escrow agent, and all of those other particulars.  We think

6  it makes the most sense for the parties just to take the

7  amounts that we've each agreed apply for each of the claims and

8  deposit them with the court.

9             THE COURT:  OK.  Let me hear from Mr. Barta.

10            MR. BARTA:  Thank you, your Honor.  This is Robert

11  Barta, on behalf of the defense.

12            Essentially, what Ms. Echtman has presented to the

13  Court is correct.  However, it was my understanding, as of

14  yesterday afternoon, that we had reached a partial settlement,

15  that we had agreed -- we absolutely have agreement on the

16  figures that are exchanged, to be exchanged.  It was my

17  understanding that we had a resolution of the LCI claims in

18  which the claims would be dismissed with prejudice.  In fact,

19  what would be happening in lieu of an escrow would be that my

20  client would pay the delta of the difference between the

21  licensing fees that we've agreed on as to what Dish owes and

22  the LCI placement fees with interest that my client is

23  purported to owe.

24            We were willing to accept those numbers and pay the

25  delta of that, and in exchange, the claims against LCI would be

1    dismissed with prejudice, claims by LCI against Dish would be
2    dismissed with prejudice because there wouldn't be any claim
3    left.  We also understood that Asia TV would dismiss its claims
4    for licensing fees against Dish with prejudice, thereby
5    reducing that; that the claims by Dish against ATL would be
6    dismissed without prejudice; and a -- I guess a reversion of
7    the purported assignment that took place.  So that, in essence,
8    what we would only have would be claims by Dish against Asia TV
9    and then Asia TV as against Dish.
10        That was my understanding as of yesterday afternoon.
11   Later in the afternoon, I received word from Ms. Echtman that
12   her client was not agreeable to that.  There was one remaining
13   discussion that we had because, if the Court may or may not be
14   aware, Dish had assigned, purported to assign, the licensing or
15   the contracts to ATL, which is a Mauritius-based company.  They
16   made a partial payment to ATL, and they withheld ▮▮▮▮ of
17   taxes for withholding fees.  We had made an inquiry as to
18   whether those fees had been paid to the government.
19   Ms. Echtman advised us that they had -- her client had not made
20   payment of those fees yet to the government.  So we had
21   inquired as to possible -- well, we had suggested possible
22   alternatives so as to address that aspect, so as to have a more
23   comprehensive resolution.  I think perhaps that somehow created
24   an impasse with respect to that issue because those fees still
25   remain unpaid -- not those fees, but those taxes.

1    But the issue with respect to the other points that I
2    mentioned, it was our understanding we were agreeable to it.
3    Clearly, we don't have an agreed-upon meeting of the minds, so
4    there is no resolution with regard to that.  It's unfortunate.
5    And we are agreeable with what Ms. Echtman proposed with
6    respect to depositing the funds into the court pursuant to the
7    federal rules so as to avoid the escrow fees and having to
8    engage in another round of discussions that perhaps would prove
9    fruitless.
10             THE COURT:  All right.  I guess with regard to the
11   first, we'll deal with, I guess, the issue upon which there is
12   agreement, which is placing the funds in escrow pursuant to
13   Rule 67(a).
14             Now, do the parties propose -- because, according to
15   the rule, it doesn't necessarily specifically contemplate two
16   parties simultaneously placing funds in escrow.  Do the parties
17   intend to draft a stipulation laying out the timing, the
18   amounts of the placement of the funds in escrow -- deposited
19   with the court, I should say, and to abide by -- I don't
20   believe there are any other parties that need to receive
21   notice, but do what is necessary under 67(a)?
22             Let me ask, Ms. Echtman, did the parties contemplate a
23   stipulation of some sort that I would be able to order, or
24   something along those lines?
25             MS. ECHTMAN:  Your Honor, we had not specifically

1  discussed that, but I think a stipulation that the Court could
2  so order would make sense where we could lay out the amounts
3  that each party is depositing, and that it's being deposited
4  pursuant to that rule so that there's clarity and just to make
5  things easier on the Court. I think that does make sense.
6           THE COURT: Mr. Barta, what are our views with regard
7  to that?
8           MR. BARTA: Your Honor, this is Mr. Barta.
9           We did not discuss it because, again, as I mentioned,
10 I thought we had a resolution as of late last night, at about
11 5 o'clock. I agree, I think the parties should be able to work
12 out a stipulation in order to accomplish that.
13          THE COURT: OK. I do think that that makes sense, in
14 part, because I just want to be sure that everybody is on the
15 same page with regard to the amounts and then the timing of the
16 deposits, and the like, so that there isn't any
17 misunderstanding.
18          I should say, with regard to the other issue, I would
19 encourage -- although I heard what Ms. Echtman was saying, but
20 from my perspective, I would encourage the parties to, after
21 you've accomplished the stipulation, revisit the issue of
22 whether the partial settlement is possible, in other words, and
23 whether some of the other issues that may have caused
24 problems -- and, again, I don't know the details, and it may
25 be, Ms. Echtman, that your client is just no longer interested,

1   but I would encourage the parties to at least try and explore

2   it, just to make sure that there isn't some portion of the case

3   that the parties could agree upon that could be resolved.

4            Let me ask, how much time do you think, Ms. Echtman,

5   the parties would need to draft a stipulation and get that to

6   me for my review?  Would a week or two weeks be something that

7   would make sense?

8            MS. ECHTMAN:  Your Honor, I think one week makes

9   sense.  We can get on that right away.  And, in fact, the

10  parties are going to be in communication next week because we

11  have three depositions scheduled.  So I expect we should be

12  able to get this done.

13           THE COURT:  OK.  Let me ask, Mr. Barta, with regard to

14  your schedule, does -- I would say a week from tomorrow.

15           MR. BARTA:  Your Honor, if I may, this is Mr. Barta.

16           I would ask for two weeks.  As Ms. Echtman says, we

17  have depositions three days in a row.  I have deposition

18  preparation with my clients.  It's rather extensive.  In fact,

19  I was in New York.  I just flew back last night.  I would ask

20  for two weeks, especially since this now comes as a -- I have

21  to confer with my clients, advise them of the breakdown with

22  respect to this partial settlement I thought we had engaged in.

23  So I would ask the Court's indulgence for two weeks.

24           THE COURT:  All right.  I think that, again, that's

25  fine.  I don't want to have a situation where we set next week

1  and then the parties return to ask for another week.  So why
2  don't we say by Friday, October 29, on or about that date, the
3  parties will provide the stipulation to me for my review.
4  Obviously, if you get it done sooner, that's fine.  If not,
5  I'll take a look at it when it comes in on the 29th.
6          Obviously, as I mentioned, to the extent, once you
7  have that completed, obviously, I encourage you to explore
8  whether the partial settlement talks are totally dead or not,
9  but, again, I'll leave that up to the parties.
10          Let me ask, with regard to today's proceedings, is
11  there anything else that we should take up today, Ms. Echtman,
12  from your perspective?
13          MS. ECHTMAN:  Your Honor, I don't think there's
14  anything substantive we need to take up today.  I do think my
15  client is open to talking to Mr. Barta's clients about a
16  business solution going forward, and I will report back to them
17  on this conference.
18          I do just want to clarify, for the record, some of the
19  statements that Mr. Barta made.  In particular, he mentioned a
20  particular amount of withholding that's not yet been remitted
21  to the IRS.  There are additional withholdings that were made
22  pursuant to applicable law with respect to payments that Dish
23  made to Asia Today and Mauritius that have been remitted to the
24  IRS.  Some of the money has not yet been sent over, but a
25  significant portion already was.

I would just also like to note for the record further to a question that the Court asked last time we were on the telephone about whether Dish had made payments directly to Asia Today in Mauritius, and Dish did make significant payments on license fees directly to Asia Today in Mauritius by wire, and those amounts were in access excess of ▮▮▮ gross of required tax withholdings. So I just wanted to clarify that point for the record.

And there's nothing else. Thank you, your Honor.

THE COURT: OK. Mr. Barta.

MR. BARTA: Yes, your Honor. Thank you.

The question is why hasn't the ▮▮▮ been paid to the IRS? Because it precludes my client in Mauritius from seeking to obtain those funds. And these amounts, as Ms. Echtman correctly points out, were paid, the ▮▮▮ was paid directly, the ▮▮▮ being withheld. This goes back to, I believe, following the denial of the preliminary injunction hearing. So we're talking about moneys from -- I believe these payments were done back in February or March, and we're now six months post that date.

So when the Court asked is there anything further, the only thing I would ask is whether or not that is an issue for your Honor to address with respect to the failure at this point of Dish to have submitted those funds to the IRS. Frankly, I'm not sure.

1             MS. ECHTMAN:  If I might respond.  I don't think

2    that's an issue before this Court.  It's not an issue in this

3    case, and it's just a point that the parties have been

4    discussing in conjunction with a potential partial settlement.

5    And those discussions, as I said, have broken down.  So I don't

6    think there's anything for the Court to address with respect to

7    the tax withholdings.

8             MR. BARTA:  Your Honor, this is Mr. Barta.

9             Have we lost the connection?

10            THE COURT:  I'm sorry.  That was my fault.  I had a

11   siren in the background, so I had muted myself and then did not

12   unmute myself.  The dangers of technology.

13            So what I was saying is that I'm not going to weigh in

14   right now with regard to that.  I think, clearly, the issue of

15   these taxes, whatever the amount, has become an issue between

16   the parties.  As things stand right now, I don't know one way

17   or the other.  I don't believe it's before me.  But, again, I

18   don't know, and I'm not weighing in on that.

19            But I do think, with regard to the areas of agreement,

20   in other words, with regard to the escrow and -- and by

21   "escrow," I'm sorry, I mean depositing with the court and the

22   stipulation, that the parties should move forward.  And, again,

23   I'm not opining on the other issue.  I understand that.  But as

24   I mentioned, I do encourage the parties to try and see if

25   there's some aspect of the case they believe that they can

1  settle once you've agreed upon the stipulation, which will
2  be due to me on or about October 29.  OK.
3             Now, I hesitate to ask, but I'm going to ask anyway.
4  Ms. Echtman, is there anything else?
5             MS. ECHTMAN:  There is nothing else, your Honor.
6  Thank you very much for your time and attention.
7             THE COURT:  OK.  Mr. Barta, anything from the defense?
8             MR. BARTA:  No, your Honor.  Thank you very much.
9             THE COURT:  All right.  Well, thank you for getting on
10 the phone, and I look forward to getting the stipulation.
11            We'll stand adjourned.  Please, everyone stay safe.
12            MR. BARTA:  Thank you, your Honor.  You too.
13            (Adjourned)