UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DISH NETWORK L.L.C. and <br> SLING TV L.L.C. <br><br>     Plaintiffs, <br><br> v. <br><br> ASIA TV USA LTD, <br> ASIA TODAY LTD., and <br> LIVING COMMUNICATIONS INC. <br><br>     Defendants. | Case No. 1:19-cv-00021-VSB |

**YUPPTV USA INC'S REPLY
TO PLAINTIFFS' OPPOSITION TO
MOTION FOR A PROTECTIVE ORDER AND TO QUASH**

**TABLE OF CONTENTS**

Page

I. Plaintiffs Admit to the Overly Broad Scope of the Topics Notices in the Deposition Subpoena ................................................................................................................. 1

II. Information Sought By Plaitniffs Has Either Already Been Provided By Defendants Or May Still Be Sought Directly From Defendants
………………………………………………………………………………...……..3

III. The Answers Sought by Plaintiffs May be Obtained from YuppTV through Written Interrogatories ................................................................................................................ 3

Conclusion ........................................................................................................................ 7

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cusumano v. Microsoft Corp.*,
   162 F.3d 7078 (1st Cir. 1998) ............................................................................................... 5

*Jones v. Hollenback*,
   No. CV F 05 0148 OWW DLB, 2006 U.S. Dist. LEXIS 108164 (E.D. Cal. 2006) ........................................................................................................................................ 4

*Mill-Run Tours, Inc. v. Khashoggi*,
   124 F.R.D. 547 (S.D.N.Y. 1989) .......................................................................................... 4

*United States v. Real Property Located at 700 N. 14th St., Springfield, Ill.*,
   No. 12-cv-3052, 2013 U.S. Dist. LEXIS 147282 (C.D.Ill. Oct. 11, 2013) ............................ 4

*Winbourne v. Eastern Air Lines, Inc.*,
   632 F.2d 219 (2d Cir. 1980) .................................................................................................. 4

**Other Authorities**

Fed. R. Civ. P. 30(b)(3) ................................................................................................................ 6

Fed. R. Civ. P. 30(b)(4) ................................................................................................................ 6

L.R. 33.3(a) ................................................................................................................................... 4

L.R. 33.3(b) ................................................................................................................................... 5

The sum total of plaintiff's Opposition to YuppTV's Motion amounts to an admission of the overly broad scope of the Topics noticed in the Deposition Subpoena, and that Plaintiffs, in fact, only need answers to four discreet questions. Moreover, with respect to those four questions, Plaintiffs may adequately obtain answers through written interrogatories without unduly burdening YuppTV or Mr. Reddy.

**I.  Plaintiffs Admit to the Overly Broad Scope of the Topics Noticed in the Deposition Subpoena**

Plaintiffs do not require a deposition of YuppTV on the thirteen separate broad and general Topics noticed in the Deposition Subpoena. For example, there is no need for Topic Nos. 1 and 2. "Topic Nos. 1 and 2 seek information on YuppTV's contractual and other business relationships with Asia TV and ATL relating to the distribution of Zee programming" but Plaintiffs admit that "[t]he relationships that DISH seeks to explore are [actually] those in topics 9-12." D.I. 466 at 11-12. With respect to Topics 3-4, Plaintiffs' only position is that "what Asia TV said to YuppTV about the propriety of the extension is plainly relevant to the parties' disputes over whether DISH agreed to the extension." D.I. 466 at 13.

Further, Plaintiffs have not explained why discovery regarding YuppTV's current agreement to broadcast Zee channels is relevant to issues in this case. Plaintiffs' breach of copyright and contract claims rest solely on Asia TV's renewal of the YuppTV agreement in 2019 for an additional year. D.I. 231 at ¶¶ 4, 42-51, 77-89. There is no allegation in the pleadings that any other agreement involving YuppTV violates any of Plaintiffs' rights.

Plaintiffs attempt to conjure up some relevance for information about YuppTV's new agreement by speculating that "Asia TV is either deferring collection of past due amounts from YuppTV until after this litigation concludes, or diverting payment to a different entity." D.I. 466 at 7-8. Plaintiffs' speculation rests entirely on their claim that Mr. Targe "could not explain why

ATL, and not Asia TV, is the counterparty to the current license agreement with YuppTV." D.I. 466 at 7. This is simply not enough to justify jumping to Plaintiffs' conclusion. And, in fact, this wild speculation is contradicted by the other testimony provided by Mr. Targe regarding Defendants' efforts to collect amounts owed to it by YuppTV. D.I. 468-3, Exhibit 6 at 189:7-15. Therefore, Plaintiffs' position does not support burdening YuppTV on this issue, especially when the terms of any agreement would be highly confidential.

Further, Plaintiffs' position that they were unaware that Asia TV and YuppTV entered into an agreement whereby YuppTV would continue to have a non-exclusive license to distribute the Zee content through November 30, 2019, and would thereafter be terminated is unsupported. D.I. No. 186 sets forth the entire scope of the agreement between Asia TV and YuppTV which settled the issues relating to the TRO ordered by the Court on November 1, 2019. That agreement also settled YuppTV's application for preliminary injunction. Elyse Echtman, Counsel for Plaintiffs, is even a signatory to the stipulation. *Id.*

Plaintiffs' sought for discovery can thus be limited to the following questions:

1. What amounts are owed and have been paid by YuppTV to Asia TV pursuant to the renewed YuppTV agreements in which Asia TV granted YuppTV the right to broadcast the signal of Zee content for periods of June 1, 2019 to November 30, 2019;

2. What efforts has Asia TV undertaken to collect amounts owed to it by YuppTV for the period of June 1, 2019 to November 30, 2019;

3. Has YuppTV entered into any agreements with Asia TV or ATL relating to settlement, waiver, compromise, or deferral of amounts owed identified in response to question number 1.

   4. What representations did Asia TV make to YuppTV regarding DISH's knowledge of the extension to the YuppTV Agreement?

**II. Information Sought By Plaitniffs Has Either Already Been Provided By Defendants Or May Still Be Sought Directly From Defendants**

YuppTV maintains that the answer to at least some of the questions above has already been provided by Defendants. For example, Plaintiffs admit that Asia TV's CEO has been able to testify to the approximate amounts owed to it by YuppTV, D.I. 466 at 12; *see also* D.I. 468-3, Exhibit 6 at 190:24-191:8. Since "[t]he amount of disgorgement ordered need only be a reasonable approximation of profits causally connected to the violation," that testimony should be enough. *SEC v. Razmilovic,* 738 F.3d 14, at 31 (2nd Cir. 2013). With respect to questions 3 and 4, however, Plaintiffs do not even identify whether they posed those questions to Defendants even though they clearly had the opportunity to do so.

Moreover, "DISH is deposing ATL on January 7, 2022," and will therefore be able to obtain answers to their questions directly from defendants. D.I. 466 at 14. For example, Plaintiffs allege that Mr. Targe, "could not explain why ATL, and not Asia TV, is the counterparty to the current license agreement with YuppTV." D.I. 466 at 7. That is information that would be known to ATL. It is also not readily apparent why Plaintiffs believe that YuppTV would know the answer to this question either. As for Asia TV's efforts to collect amounts owed, Plaintiffs concede that Mr. Targe informed them that ATL would know this information. *See, e.g.*, D.I. 466 at 7.

**III. The Answers Sought by Plaintiffs May be Obtained from YuppTV through Written Interrogatories**

Even if this Court determines that Plaintiffs may seek discovery on the above identified questions, an oral deposition is not necessary. In view of the nature of the now limited questions for which Plaintiffs seek answers Plaintiffs may obtain the answers through written interrogatories, without unduly burdening Mr. Reddy or YuppTV. Local Civil Rule 33.3 states that interrogatories

may be served "(1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court."  Further, "[w]here the issues to be addressed by the witness are narrow and straightforward and the hardships of taking an oral deposition would be substantial, written questions may be an adequate substitute, at least in the first instance."  *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 549 (S.D.N.Y. 1989); citing *Winbourne v. Eastern Air Lines, Inc.,* 632 F.2d 219, 226 (2d Cir. 1980).  Written questions are also appropriate "when dealing with neutral or 'friendly' witnesses."  *Jones v. Hollenback*, No. CV F 05 0148 OWW DLB, 2006 U.S. Dist. LEXIS 108164, *13 (E.D. Cal. 2006). *United States v. Real Property Located at 700 N. 14th St., Springfield, Ill.*, No. 12-cv-3052, 2013 U.S. Dist. LEXIS 147282, at *16 (C.D.Ill. Oct. 11, 2013).  That is the case here.

As an initial matter, YuppTV has no interest in the outcome of the present litigation.  Therefore, it may be appropriately considered a neutral party.  Further, the purpose of the discovery sought from YuppTV is to essentially verify answers already provided or which will be provided by Defendants.  Thus, this is not a situation where the value of YuppTV's testimony will turn on credibility determinations that cannot be adequately explored or assessed through interrogatories.  Instead, Plaintiffs only need basic straightforward information that may be provided in writing.

For example, the dollar figure for amounts owed and paid to Asia TV under the relevant agreement for the time period of interest requires a basic computation of amounts outstanding and a review of records regarding amounts paid.  In fact, this is precisely the basic computation that this jurisdiction's Local Civil Rules states is appropriately obtained through interrogatory.  *See* L.R. 33.3(a) ("[I]nterrogatories will be restricted to […] the computation of each category of damage alleged").  And, YuppTV can just as easily provide a written explanation of its computation.

Regarding the remaining questions, they are more practically answered through written interrogatories as well. L.R. 33.3(b) (interrogatories may be served "(1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court." Any efforts that Asia TV has undertaken to collect amounts owed to it by YuppTV for the period of June 1, 2019 to November 30, 2019 calls for a straight forward response that may be provided in writing. For example, either Asia TV has or has not engaged in efforts to collect. If it has, then YuppTV may identify those efforts to the best of its knowledge. Similarly, whether YuppTV has entered into any agreements with Asia TV or ATL relating to settlement, waiver, compromise, or deferral of amounts owed calls for a simple "yes" or "no" answer. If any such agreement were entered into, then YuppTV may just as easily provide a summary of its substantive provisions – and would likely be able to do so at greater depth in a written response as compared to being subject to a memory test during oral deposition. Finally, whether and what representations Asia TV may have made to YuppTV regarding DISH's knowledge of the extension to the YuppTV Agreement can also be answered matter of fact-ly through written responses.

YuppTV's answer to interrogatories in lieu of an oral deposition is an especially appropriate outcome in this case. First, as a non-party YuppTV "is entitled to special weight in evaluating the balance of competing needs" including its interest in avoiding undue burden and the harm plaintiffs will suffer if they do not obtain the sought for discovery. *Cusumano v. Microsoft Corp.*, 162 F.3d 7078, 717 (1st Cir. 1998).

Second, Plaintiffs will not suffer from any tangible harm if they receive the sought for answers through written responses to interrogatories versus through oral deposition. As already noted above, the information sought is straight forward and not controversial, and YuppTV has no interest in the outcome of the litigation. On the other hand, the burden to Mr. Reddy and YuppTV

from having to participate in an oral deposition is clear for reasons set forth in YuppTV's Memo in Support of its motion, D.I. 459-1 at 4-6, and which are further discussed below.

Third, any supposed harm to Plaintiffs can be solely attributed to their own failure to diligently seek discovery throughout this litigation. Essentially Plaintiffs ask this Court to rectify any alleged harm it will face as a result of its lack of diligence by burdening Mr. Reddy to have to rush to cancel commitments entered into long ago, on short notice. As discussed in YuppTV's Opening Memo, Plaintiffs could have sought YuppTV and Mr. Reddy's oral deposition years ago. *See* D.I. 459-1 at 5. Tellingly, ***Plaintiffs' opposition papers completely fail to address why they waited until the eve of the most recent extension fact discovery deadline to seek the deposition***. Instead, Plaintiffs' Opposition actually provides additional information – previously unknown to YuppTV – that further highlight Plaintiffs' negligence.

Plaintiffs contend they need answers from YuppTV because "this Court has already found defendants' testimony in this case has been lacking in credibility and contradicted by the documentary evidence." D.I. 466 at 14. The Court made that determination in August 2019. Since then, the fact discovery deadline has been moved eight times.[1] D.I. 221, 224, 279, 345, 390, 411, 435, 450. So, why have Plaintiffs waited until the end of the eighth extension to the fact discovery deadline to seek information, when they knew they would need to do so as early as August 2019? Had they been diligent in their discovery efforts, the parties could have found a time within the fact discovery deadline to conduct an oral deposition – notwithstanding the overly broad scope of the Topics. As it stands now, Plaintiffs unreasonably expect Mr. Reddy to drop what he is doing,

---

[1] Should Plaintiffs attempt to invoke the Covid-19 pandemic as an excuse for their failure to earlier seek YuppTV's deposition, YuppTV notes that on March 17, 2020 this Court "ORDERED, pursuant to Fed. R. Civ. P. 30(b)(3) and (b)(4), that all depositions in this action may be taken via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means." D.I. 215.

forgo commitments entered into months ago, expend resources to travel to a location with reliable internet connectivity and to sit for deposition for several hours just so that Plaintiffs may receive answers that are available to them through interrogatories. Because the information sought may more easily be provided through answers to written interrogatories, requiring YuppTV and Mr. Reddy to sit for oral deposition is simply unreasonable, unduly burdensome.

## Conclusion

YuppTV respectfully requests that the court quash the Deposition Subpoena or, alternatively, limit discovery to written interrogatories.

December 20, 2021

*/s/ Ahmed M.T. Riaz*
Ahmed M.T. Riaz
SCHIFF HARDIN LLP
1185 6th Ave, Suite 3000
New York, NY 10036
Tel: (212) 745-5000
Fax: (212) 351-4035
ariaz@schiffhardin.com

*Attorneys for non-party
YuppTV USA, Inc.*